FILED
COURT OF APPEALS
DIVISION II

2013 APR 30 AM 8: 34

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CHARITY L. MEADE, | No. 42685-4-II |
| Appellant, | |
| v. | |
| DAVID A. NELSON, Attorney; and NELSON LAW FIRM, PLLC, | PUBLISHED OPINION |
| Respondents. | |

QUINN-BRINTNALL, J. — Charity Meade's personal injury suit was dismissed on summary judgment because her attorney, David Nelson, failed to timely serve the opposing party within the statute of limitations. Following this, Nelson hired attorney Christopher Tompkins to settle a potential malpractice suit against Nelson and his firm, Nelson Law Firm, PLLC. Despite considerable discussion with Tompkins, and a clear understanding that Nelson and his firm intended to defend any malpractice lawsuit, Meade sought and received an order of default. Meade obtained this order of default without notice to Tompkins, Nelson, or Nelson's law firm and, later, sought to reduce the order to judgment of $3,958,731.83—again without notice to Tompkins, Nelson, or Nelson Law Firm, PLLC.

Before Meade reduced the order of default to judgment, Tompkins appeared and successfully argued that the trial court should set aside the default order. Meade seeks

interlocutory appeal of that decision, arguing that because Tompkins failed to file a notice of appearance pursuant to CR 4(a), Tompkins and Nelson were not entitled to notice of the default under CR 55(a)(3) or, alternatively, the trial court abused its discretion in finding good cause under CR 55(c)(1) to set aside the default.

Because the record contains multiple postlitigation contacts between Meade and Tompkins, including a settlement offer referencing the case that Meade did not expressly reject, we hold that Tompkins substantially complied with CR 4(a)(3) and was entitled to notice of the default hearing. Accordingly, we affirm the trial court.

## FACTS

BACKGROUND

On August 4, 2004, Meade was injured in a motor vehicle collision. Meade hired attorney Nelson to bring a personal injury suit on her behalf in March 2007, but the trial court dismissed the suit on summary judgment because Nelson failed to timely serve the opposing party within the statute of limitations.[1] In an April 2008 letter, Nelson informed Meade that her "remedy at this point is to bring a claim against me and my malpractice insurance carrier." 5 Clerk's Papers (CP) at 954.

Meade retained the Krafchick Law Firm, PLLC (KLF) to represent her in the potential malpractice suit against Nelson. Nelson and his firm retained attorney Tompkins to settle (or possibly defend) the suit. On July 23, 2010, KLF and Tompkins discussed the suit and in an e-mail sent the same day, KLF confirmed that a phone conference would occur on July 30 to discuss potential settlement. KLF also informed Tompkins that it had "prepared the Complaint

---

[1] We affirmed the trial court's summary judgment in a previous opinion. *Meade v. Thomas*, 152 Wn. App. 490, 217 P.3d 785 (2009).

to file by Monday, August 2, 2010, if we haven't reached a settlement -- which hopefully we will have." 5 CP at 910.

Tompkins responded to this message on July 27 with the following e-mail:

I understand you [KLF] have called and threatened that if we don't accept service today you will file and serve the lawsuit today, or tomorrow. Given our conversation last Friday . . . I frankly do not understand your apparent position. There was no discussion in our conversation, or reference in your email, to filing or service or of our accepting service this week.
In addition to that, there is no need for you to either file or serve a lawsuit, or have an answer today. At most, one or the other of filing or service, but not both, has to occur by late next week.
If you nevertheless decide to file or serve, we are not in a position to do anything about that. We have told you that we would seek our client's consent to accept service. We can't and won't accept service without his permission. We will contact you when we have a response.

5 CP at 909-10.

KLF replied to Tompkins's e-mail immediately and expressed concern over "any misunderstandings." 5 CP at 908. KLF explained that it was exercising its "need to protect our client from the nearing expiration of the statute of limitations. . . . Serving the suit safeguards everyone's interests, so I earnestly hope you in no way perceive a detrimental impact on exploring settlement." 5 CP at 909. Tompkins never responded to this e-mail or informed KLF whether Nelson consented to Tompkins accepting service on behalf of him and the firm. On July 28, KLF filed its malpractice suit in Cowlitz County Superior Court and served Nelson's law firm.[2] Two days later, KLF and Tompkins spoke about Meade's case and KLF sent Tompkins

---

[2] The July 28 declaration of service reflects that only Nelson Law Firm, PLLC was served, not the firm *and* Nelson. Meade's briefs frequently contend that they served the defendants twice. This, however, is incorrect. Meade served the Nelson Law Firm, PLLC on July 28, and Nelson himself on September 29. These were two distinct events involving two distinct defendants.

3

Meade's social security claim file "for purposes of settlement negotiations." 5 CP at 975. The parties do not appear to have discussed whether the lawsuit had been filed with the court.

On August 23, 2010, KLF faxed Tompkins an "ER 408 Settlement Demand" with the heading of "*Meade v. Nelson*, Cause No. 10-2-01335-1." 5 CP at 978. The demand letter explicitly referenced "our recent discussions with you [Tompkins], regarding our client Ms. Charity Meade in the above case for legal malpractice against Attorney David A. Nelson" and offered to settle the matter for $250,000. 5 CP at 978. Tompkins and KLF telephonically discussed the status of the case and potential settlement on September 8 but, again, "[n]o mention was made during that discussion about the lack of a Notice of Appearance [from Tompkins] or responsive pleading." 5 CP at 970. Having still not clarified the notice/service issue, KLF served Nelson at home on September 29.

Tompkins responded in writing to KLF's August 23 settlement demand on October 28. That communication stated, "I write in response to the settlement demand, and associated materials, that you have provided *in connection with this case*." 5 CP at 984 (emphasis added). The letter discussed potential evidentiary problems Meade would face at trial (e.g., proving that a traumatic injury caused her fibromyalgia) and the likely cost of litigation and appeals. Tompkins explained that he was "authorized to offer [Meade] $40,000 in satisfaction of her claims against Mr. Nelson." 5 CP at 985.

KLF never responded to this settlement offer and no further communications occurred between Tompkins and KLF.

PROCEDURE

Less than a month later, on November 23, 2010, KLF filed a motion for a default order against Nelson and Nelson Law Firm, PLLC pursuant to CR 55(a). The motion stated that "[t]o

date the Defendants have not responded in accordance with CR 4 to defend the action or serve a copy of their appearance or defense." 1 CP at 4. That same day, the trial court granted the order of default, expressly noting that KLF "was not required under the circumstances to serve either of the Defendants [Nelson and Nelson Law Firm, PLLC] with notice of her Motion for Default." 1 CP at 11. Because Tompkins failed to file a notice of appearance, KLF also did not provide him notice of the motion for default.

On August 3, 2011, KLF filed a motion for default judgment. The proposed order requested a default judgment of $3,958,731.83 along with $730 for statutory attorney fees and costs. Despite never receiving notice of the default order or the motion for default judgment, Tompkins became aware of the motion for default judgment and e-mailed KLF on August 4 stating, in part,

> I am flabbergasted to learn today that you filed the lawsuit on July 28, 2010, without any word or notice to my office, although you communicated with me on this matter on July 30, 2010, and that you apparently have noted a motion for default for this coming Monday without any notice to our office.
> You were and are aware of our representation of Mr. Nelson. You were and are aware that we contest your claims. You were, and should be, aware that CR 55(a)(3) requires you to give notice of a motion for default after even an informal appearance on behalf of a defendant.
> I have not seen your motion, but gather that it is against Mr. Nelson and his office (and perhaps others). If that is correct, I ask that you strike it, and confirm immediately that you will do so.

5 CP at 907-08. On August 5, Tompkins also filed a notice of appearance along with an answer to the original complaint.

In response, KLF e-mailed Tompkins explaining that "all of [our] communications were prefiling. You were aware that we were filing a lawsuit. So at this time we believe what you are doing is too little too late." 5 CP at 906-07. Tompkins responded, explaining that at least two of

the settlement discussions occurred *after* KLF filed the lawsuit and that Tompkins was entitled to notice of the motions. The record does not indicate that KLF responded to this e-mail.

Tompkins filed a motion to set aside the order of default on August 26. KLF opposed the motion on August 31. The trial court heard argument on the motion to set aside the order of default on September 2.

Tompkins argued that

[w]e are not contesting the fact that we failed to file a formal notice of appearance or an answer. We can't. We're not contesting that that failure was a mistake and result of an oversight. We agree as [KLF] has pointed out in their pleadings that we were aware of their intent to file a lawsuit and to serve our client.

. . . [W]e're not exactly sure almost 13 months later exactly what happened except that there was a communication failure of some sort between Mr. Nelson and my office. . . . In any event, we never did get a copy of the Complaint until very recently. . . . I believe the record's clear that we intended to defend the lawsuit.

. . . .

. . . [O]ur argument is that on two separate bases the default either must or should be set aside. The first and the basis on which it must be set aside is that we believe that there was an appearance made by our office so that under Rule 55, CR 55(a)(3) we were entitled to notice before any default was taken, and the case law is that defaults taken without appropriate notice when required must be set aside. We are also moving under CR 55(c) to set aside the default for good cause.

Report of Proceedings (RP) at 3-4. Tompkins also admitted that KLF

didn't attempt to conceal the existence of the litigation here. But at some point, Your Honor, we submit they decided it would be preferable rather than in one of the conversations or communications we had or in an e-mail in addition to the communications we had saying, "by the way, we don't have your answer, where is it." We have a record of a demand of $250,000 for an opening demand in settlement, an offer of $40,000, not an unbridgeable gap, and then a decision to take advantage of a mistake, what had to have been known to be a mistake, and move for default instead of continuing that response.

RP at 11.

In response, KLF argued that despite its "heart [going] out to the defendants,"

> [t]here is no good cause to set aside the default when the defendant was negligent. And this isn't simply the negligence of Mr. Tompkins' firm. Mr. Nelson was also served with these Complaints not once, but twice, and he's an attorney, he knows that an answer has to be filed.
>
> So how could [this have] been all avoided? It could have been avoided if Mr. Tompkins or Mr. Nelson called us and said they were appearing. It could have been resolved if they filed an answer. It could have been resolved if they filed a notice of appearance, as they did very quickly. We filed our motion for a default judgment with a $4 million price tag to it. I dare say somebody in Cowlitz County alerted Mr. Nelson who I suspect got on the phone to Mr. Tompkins and said, "Hey, what the heck's going on here?" and that's when all broke loose. But they shouldn't benefit from the negligence. And at this point there's no good cause to set aside the default order.

RP at 13-14.

Following this, the trial court ruled in favor of Tompkins, granting the motion to set aside the default order:

> I think good cause has been shown under CR 55(c). It's clear that there was not an actual notice of appearance, but just as clearly there was an intent to defend this case and it's a bit disingenuous to argue that the correspondence and the contacts did not constitute that, did not constitute an informal appearance. It was clear that Mr. Nelson was represented by counsel. It was clear that they were defending him. There were settlement negotiations. There were discussions in the letter of October 28th talking about admissibility of evidence. All of those things make it very clear to me that they intended to defend.
>
> You know, the question is asked somewhat rhetorically how could this have been avoided. Well, defense could have answered, they could have responded, they could have done any number of things. But I agree with Mr. Tompkins that this all could have been avoided if during these conversations plaintiff's counsel had just said, "Hey, where is your answer? Let's get this thing going." That certainly would have been the professional thing to do. And to try to. . . . This is very specifically form over substance. And it's the kind of gotcha practice of law that I don't think much of and it certainly doesn't do the profession much good when this kind of thing comes up.
>
> So I think a very clear case, this is an easy decision for me. Based on good cause here that has been shown, I'm going to set aside the default and this matter is to proceed through the normal course of its litigation.

RP at 16-17.

We grant Meade's request for interlocutory review of this decision.[3]

## DISCUSSION

Meade argues that Tompkins's actions did not meet the requirements for substantial compliance under CR 4(a)(3) and, accordingly, Tompkins was not entitled to notice of the motion for default under CR 55(a)(3) because he "did not answer, demur or give notice of appearance." Br. of Appellant at 14. We disagree. Although the Washington Supreme Court, in *Morin v. Burris*, 160 Wn.2d 745, 762, 161 P.3d 956 (2007), rejected the "manifested intent to defend" doctrine this court promulgated in *Smith v. Arnold*, 127 Wn. App. 98, 106, 110 P.3d 257 (2005), it did not exalt "form over substance" and still requires us to examine whether a defendant's postlitigation conduct "was designed to and, in fact, did apprise the plaintiffs of the [defendant's] intent to litigate the case[]." *Morin*, 160 Wn.2d at 755.

Here, the record clearly reflects that after Meade filed suit, Tompkins intended to litigate or settle the case. Accordingly, we hold that Tompkins was entitled to notice under CR 55(a)(3) having substantially complied with the appearance requirements. We affirm the trial court's ruling vacating the notice of default.

We review questions of law de novo, including whether on undisputed facts an appearance has been established as a matter of law. *Rosander v. Nightrunners Transp., Ltd.*, 147 Wn. App. 392, 399, 196 P.3d 711 (2008). Under CR 4(a)(3), a "notice of appearance" shall "be

---

[3] This court initially believed this to be an appeal from the vacation of a default judgment, a matter appealable as of right under RAP 2.2(a)(10). On further review, it was determined that the matter on review was not a vacated judgment but a vacated order of default. Such a ruling is subject to discretionary review but is not appealable as of right. RAP 2.3(a) ("Unless otherwise prohibited by statute or court rule, a party may seek discretionary review of any act of the superior court not appealable as a matter of right."). Neither party has requested dismissal of the matter on this ground. Accordingly, we address the merits of the trial court's ruling in this case and grant interlocutory review of the trial court's motion to vacate the default order.

in writing, shall be signed by the defendant or his attorney, and shall be served upon the person whose name is signed on the summons." Under CR 55(a)(3), "[a] party who has appeared in an action is entitled to notice of a default judgment hearing and, if no notice is received, is generally entitled to have judgment set aside without further inquiry." *Morin*, 160 Wn.2d at 754. Although the rules do not define what constitutes an appearance, RCW 4.28.210 states,

> A defendant appears in an action when he or she answers, demurs, makes any application for an order therein, or gives the plaintiff written notice of his or her appearance. After appearance a defendant is entitled to notice of all subsequent proceedings; but when a defendant has not appeared, service of notice or papers in the ordinary proceedings in an action need not be made upon him or her. Every such appearance made in an action shall be deemed a general appearance, unless the defendant in making the same states that the same is a special appearance.

For over a century, Washington courts have applied the doctrine of substantial compliance to the appearance rules. *Morin*, 160 Wn.2d at 749 ("Substantial compliance with the appearance requirement may be satisfied informally."). In *Morin*, the Washington Supreme Court refused to adopt the "manifested intent" test this court used in *Smith*, 127 Wn. App. at 104, whereby courts would look to whether substantial evidence supported a finding that the plaintiff could have "reasonably harbor[ed] illusions about whether" the defendant "intend[ed] to defend a matter." 160 Wn.2d at 762. Instead, the *Morin* court held that "mere intent to defend, whether shown before or after a case is filed, is not enough; the defendant must go beyond merely acknowledging that a *dispute* exists and instead acknowledge that a dispute exists *in court*." 160 Wn.2d at 756. Accordingly, after *Morin*, it is clear that when applying "the substantial compliance doctrine," courts should look to "the defendant's relevant conduct [occurring] after litigation [has] commenced." 160 Wn.2d at 755.

Here, the record clearly indicates that Tompkins failed to file a notice of appearance or explicitly notify KLF of his notice of appearance in writing as required by RCW 4.28.210 and

CR 4(a)(3). But the record also clearly indicates that despite these procedural deficiencies, KLF had actual knowledge that Tompkins was defending Nelson and Nelson Law Firm, PLLC against the lawsuit: *after filing suit*, KLF continued to discuss settlement with Tompkins (an action rendered unintelligible if KLF believed Tompkins did not represent Nelson) and in a settlement offer from October 28, Tompkins referenced the case and potential evidentiary issues Meade would face at trial.

In the aftermath of *Morin*, whether a plaintiff is "reasonably harbor[ing] illusions about whether the opposing party intends to defend" is not dispositive. 160 Wn.2d at 762 (Bridge J., concurring in part/dissenting in part). Instead, in light of the fact that "litigation is inherently formal," a party must convey that it intends to defend the suit *and* perform some act, formal or informal, acknowledging the jurisdiction of the court after litigation has commenced. *Morin*, 160 Wn.2d at 757. Tompkins's unanswered offer of settlement referencing the case and potential evidentiary issues satisfies this requirement. Accordingly, we hold that Tompkins was entitled to notice of the default hearing.

Although the trial court's stated reason for setting aside the order—Tompkins's manifested intent to defend—is untenable under the *Morin* decision, we may affirm a trial court's *correct result* on any grounds supported by the record.[4] *Nast v. Michels*, 107 Wn.2d 300,

---

[4] We note, moreover, that CR 55(f)(1) dictates that a "court shall not sign an order of default or enter a judgment" when more than one year has elapsed "after service of summons with no appearance being made." Here, KLF served Nelson Law Firm, PLLC on July 28, 2010, but did not move for default judgment until August 3, 2011. Accordingly, Nelson Law Firm, PLLC would have been entitled to notice of the entry of default judgment even if the trial court had not vacated the notice of default. In addition, even if the trial court had entertained KLF's motion for default judgment, CR 55(b)(2) gave the trial court discretion to "determine the amount of damages . . . or to make an investigation of any other matter." Thus, contrary to KLF's assertions, moving for a default judgment after obtaining an entry of default did not entitle them to the nearly $4 million in speculative damages they were seeking.

No. 42685-4-II

308, 730 P.2d 54 (1986).  Because the record supports a finding that Tompkins substantially complied with CR 4(a)(3) and was therefore entitled to notice, we affirm.[5]

QUINN-BRINTNALL, J.

We concur:

PENOYAR, J.

WORSWICK, C.J.

---

[5] Meade also argues that the trial court abused its discretion in finding good cause to set aside the order of default.  Appellate courts consider two factors when determining whether a trial court abused its discretion in finding good cause to vacate:  (1) excusable neglect and (2) due diligence. *Seek Sys., Inc. v. Lincoln Moving/Global Van Lines, Inc.*, 63 Wn. App. 266, 271, 818 P.2d 618 (1991).  Having determined that Tompkins was entitled to notice, we do not address this argument.

11