IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SERVATRON, INC. a Washington corporation, | ) ) ) | No. 32251-3-III |
| Respondent, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| INTELLIGENT WIRELESS PRODUCTS, INC., a Washington corporation; CYFRE, LLC, a California limited liability company, | ) ) ) ) ) | |
| Defendants, | ) ) | |
| LAWRENCE KOVAC and JANE DOE KOVAC, husband and wife, and the marital community composed therein, | ) ) ) ) | |
| Appellants. | ) | |

FEARING, J. — We address today a reoccurring issue: whether a defendant "appeared" in a lawsuit such that the plaintiff needed to afford him notice before entering a default judgment. We do not applaud the conduct of defendant's counsel in this appeal, and we encourage practitioners to protect their clients by always timely entering a formal notice of appearance with the court and opposing counsel. Nonetheless, we hold that

Lawrence Kovac's California attorney made a sufficient "appearance" for purposes of CR 55. We reverse the trial court's refusal to vacate a default judgment in favor of plaintiff Servatron, Inc., against defendants Lawrence Kovac and his wife.

## PROCEDURE

The facts underlying the lawsuit and entailing the substantive dispute between the parties bear little relevance to the issue on appeal. On December 23, 2011, Servatron sued Intelligent Wireless Products, Inc. (IWP), Cyfre, LLC, and Lawrence and Jane Doe Kovac, alleging, (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) unjust enrichment, and (4) tortious interference. Jane Doe Kovac is a fictitious name for the wife of Lawrence Kovac. Servatron alleged that IWP failed to pay for orders of cell phone amplifiers that it placed with Servatron. Servatron also alleged that IWP, Cyfre, and the Kovacs interfered with Servatron's attempts to resell goods in its possession that IWP ordered but for which IWP did not pay. Among other relief requested, Servatron sought the piercing of IWP's corporate veil to hold Cyfre and the Kovacs, both IWP shareholders, personally liable for IWP's breach and tortious interference. Lawrence Kovac was CEO of IWP, until it was administratively dissolved on November 22, 2009.

Servatron personally served IWP, Cyfre, and the Kovacs in California during January and February of 2012. Lawrence Kovac hired California attorney, Faraz

2

Mobassernia, on Wilshire Boulevard in Santa Monica, to investigate and represent him

and his wife in Servatron's suit.

In April 2012, Faraz Mobassernia contacted Servatron's attorney, Michael Atkins,

and told him he represented IWP, Cyfre, and the Kovacs. On April 5, 2012, Mobassernia

wrote to Atkins:

> Please contact my office to discuss the parameters of this matter. I emailed the court in Washington and I have to get a response from them regarding the filing of this complaint. I do not see a case number on the face of the summons or complaint. Please call me at your earliest convenience.

Clerk's Papers (CP) at 146. Atkins responded the same day:

> Here's the case number: 11-2-05197-2.
> I will check with my client about your request for 30 more days to investigate before answering.

CP at 146.

The parties held a phone conference to settle the case, after which Atkins sent a

settlement proposal to Mobassernia on April 30. After receiving no response, Atkins

wrote Mobassernia on June 4, 2012, stating:

> We need your clients' acceptance of our basic settlement terms by Friday [June 8, 2012] or Servatron is going to move forward with the default process and/or litigation.

CP at 181. Mobassernia requested an additional week to respond due to Lawrence

Kovac's mother's imminent death. Servatron agreed. On June 5, Atkins wrote to

Mobassernia:

3

In light of Lawrence's mother's situation, we'll agree to extend the deadline as you requested until 6/15. However, we need the defendants to accept our settlement terms by then or we'll go into litigation mode— including moving for default. We're not willing to drag things out any longer than that.

CP at 154. On June 6, 2012, Michael Atkins wrote Faraz Mobassernia: "Here's the scheduling order in case we move back to the litigation track." CP at 154.

On June 15, 2012, Faraz Mobassernia sent Michael Atkins an "agreement for IP [intellectual property] rights" and stated he would call shortly. CP at 180. On June 21, Mobassernia wrote again to Atkins:

Please call me to discuss developments on this case. Tried calling both your phone numbers, computer operator comes on the phone asking for your 10 digit number.

CP at 179. Atkins replied that he was in China and stated:

If your clients agree to the settlement terms in my last substantive email, we can work toward settling. Based on your last substantive message to me, your clients reject many of those terms. Therefore, I don't know that further talks would be productive. If something has changed, please describe what has changed in an email, which is easier for me to address while I'm on the road.

CP at 179.

Faraz Mobassernia replied:

Your client is selling the product to USA Technologies after being fully aware that it does not have the right to do so (ergo your client's request in the settlement) ..... what's going on????

CP at 179. Michael Atkins, in turn, replied:

4

> I don't understand what you mean. Servatron has the right to sell the product under the UCC in an effort to defray what your client owes. If you have contrary authority, please send it so we can consider it. However, the UCC is quite clear on this point.

CP at 179.

> On June 18, Faraz Mobassernia wrote to Michael Atkins, in part:

> Here is an email discussing our issues, direct from my client point by point....call to discuss.
> Here are the simple issues
> . . . .
> Thanks for organizing the call last week. Based on our discussion, Servatron would be willing to settle along the following terms:

CP at 186.

All written communications between counsel had been by e-mail. Communications between counsel ended after Michael Atkins' June 21 missive. Neither IWP, Cyfre, nor the Kovacs filed a notice of appearance or answer with the court after the failed settlement negotiations.

On July 11, 2012, Servatron moved for entry of default, without serving the motion on Faraz Mobassernia, IWP, Cyfre, or the Kovacs. In an affidavit in support of the motion, Michael Atkins declared that he told defendants that Servatron would "go into litigation mode—including moving for default" after June 15, 2012. CP at 29. The trial court granted the motion and entered an order of default on July 19, 2012.

On October 15, 2012, Servatron moved for entry of a default judgment. Again, it did not serve this motion on defendants or Faraz Mobassernia. The trial court granted

Servatron's motion the same day and awarded Servatron's requested damages and injunctive relief, while holding Cyfre and Lawrence and Jane Doe Kovac jointly and severally liable for the judgment against IWP.

On October 31, 2013, Servatron served a California collection action on Lawrence and Jane Doe Kovac. On December 11, 2013, the Kovacs hired Washington counsel, and, on December 20, 2013, the Kovacs moved to set aside the default judgment under CR 60(b). The Kovacs argued that their delay in moving to vacate was justified because they did not learn of the judgment until Servatron served them with a collection action in California and they earlier believed Servatron had decided not to pursue litigation.

In response to the motion to vacate the default judgment, Servatron argued that the Kovacs never appeared in the lawsuit and, therefore, it need not have given them notice of a default hearing. Servatron also contended it complied with CR 55's notice requirement by telling the Kovacs it would move for default if they did not reach a settlement during negotiations. The trial court denied Lawrence and Jane Doe Kovac's motion to vacate the default judgment, in part, because the Kovacs did not file their motion within one year and because of the couple's neglect in not resolving the dispute.

## LAW AND ANALYSIS

We must decide whether Lawrence and Jane Doe Kovac "appeared" in the lawsuit, entitling them to notice when Servatron sought an order of default and default

6

judgment. If the answer is "yes" we must decide if the Kovacs timely sought to vacate the default judgment.

CR 55 Appearance Requirement

The Kovacs contend that settlement negotiations and communications through their California attorney and with Servatron after the suit began constituted substantial compliance with CR 55's appearance requirement, sufficient to entitle them to notice of Servatron's motions for default. We agree.

When the facts surrounding the adequacy of a party's appearance under CR 55 are undisputed, this court reviews de novo whether that party has established its appearance as a matter of law. *Meade v. Nelson*, 174 Wn. App. 740, 750, 300 P.3d 828, *review denied*, 178 Wn.2d 1025, 312 P.3d 652 (2013); *Rosander v. Nightrunners Transp., Ltd.*, 147 Wn. App. 392, 399, 196 P.3d 711 (2008). In *Sacotte Constr. Inc. v. Nat'l Fire & Marine Ins. Co.*, 143 Wn. App. 410, 415, 177 P.3d 1147 (2008), Division Two of this court applied an abuse of discretion standard of review when addressing the trial court's failure to vacate a default judgment. In that case, the parties disputed whether the acts constituting the formal appearance actually occurred. In our appeal, the underlying facts are based on written communications filed with the court. The only dispute is what conclusion to draw from the writings.

CR 55(a)(3) reads:

> Notice. Any party who has *appeared in the action for any purpose*
> shall be served with a written notice of motion for default and the
> supporting affidavit at least 5 days before the hearing on the motion.

(Emphasis added.) Under CR 55(a)(3), if a party has "appeared" before a motion for

default has been filed, that party is entitled to notice of the motion before the trial court

may enter a valid default order. *Smith v. Arnold*, 127 Wn. App. 98, 103, 110 P.3d 257

(2005), *abrogated on other grounds by Morin v. Burris*, 160 Wn.2d 745, 161 P.3d 956

(2007). Consequently, if a defendant has appeared but is not given proper notice prior to

entry of the order of default, the defendant is entitled to vacation of the default judgment

as a matter of right. *Gutz v. Johnson*, 128 Wn. App. 901, 912, 117 P.3d 390 (2005);

*Prof'l Marine Co. v. Those Certain Underwriters at Lloyd's*, 118 Wn. App. 694, 708, 77

P.3d 658 (2003); *Colacurcio v. Burger*, 110 Wn. App. 488, 497, 41 P.3d 506 (2002); *In

re Marriage of Daley*, 77 Wn. App. 29, 31, 888 P.2d 1194 (1994); *Shreve v. Chamberlin*,

66 Wn. App. 728, 731, 832 P.2d 1355 (1992). Default judgments are disfavored because

it is the policy of the law that controversies be determined on the merits rather than by

default. *Griggs v. Averback Realty, Inc.*, 92 Wn.2d 576, 581, 599 P.2d 1289 (1979);

*Dlouhy v. Dlouhy*, 55 Wn.2d 718, 721, 349 P.2d 1073 (1960); *Colacurcio v. Burger*, 110

Wn. App. at 494.

CR 4(a)(3) reads, in relevant part:

> A notice of appearance, if made, shall be in writing, shall be
> signed by the defendant or his attorney, and shall be served upon the person
> whose name is signed on the summons.

8

RCW 4.28.210 states:

> A defendant appears in an action when he or she answers, demurs, makes any application for an order therein, or gives the plaintiff written notice of his or her appearance.

A defendant need not strictly follow CR 4(a)(3) or RCW 4.28.210.

Because default judgments are disfavored, the concept of "appearance" is to be construed broadly for purposes of CR 55. *Colacurcio*, 110 Wn. App. at 495; *City of Des Moines v. Pers. Prop. Identified as $81,231*, 87 Wn. App. 689, 696, 943 P.2d 669 (1997). The Kovacs do not rely on a formal written appearance filed with the court. Washington courts repeatedly allow informal acts to constitute an appearance. *Meade v. Nelson*, 174 Wn. App. 740 (2013); *Prof'l Marine Co.*, 118 Wn. App. at 708; *Colacurcio*, 110 Wn. App. at 495. If a party actually appeared or substantially complied with the appearance requirements, he is entitled to receive such notice. *Morin v. Burris*, 160 Wn.2d 745, 755, 161 P.3d 956 (2007). Substantial compliance may be satisfied informally. *Morin v. Burris*, 160 Wn.2d at 749.

*Morin v. Burris*, 160 Wn.2d 745 is the latest pronouncement from our state high court on this subject. Under *Morin*, the defendant's informal appearance must be based on action occurring after the service of the lawsuit. *Morin v. Burris*, 160 Wn.2d at 755. A party's conduct after litigation has commenced will determine whether he has "appeared" in a matter for the purpose of CR 55(c). *Morin v. Burris*, 160 Wn.2d at 755.

9

A court must examine whether a defendant's postlitigation conduct was designed to and, in fact, did apprise the plaintiff of the defendant's intent to litigate the case. *Morin v. Burris*, 160 Wn.2d at 755; *Meade v. Nelson*, 174 Wn. App. at 749. Mere intent to defend is not enough. The defendant must go beyond merely acknowledging that a dispute exists and instead acknowledge that a dispute exists in court. *Morin v. Burris*, 160 Wn.2d at 756.

*Meade v. Nelson*, 174 Wn. App. 740 contains similarities to this appeal. The *Meade* court held postlitigation contact between the plaintiff's attorney and defendant's attorney constituted a sufficient appearance. The defendant, through his attorney, responded to a settlement offer and discussed potential evidentiary issues. This court upheld the trial court's vacation of an order of default.

The Kovacs substantially complied with CR 55's appearance requirement. The Kovacs' attorney contacted Servatron's lawyer by phone and e-mail after Servatron filed suit, informed him that he represented the Kovacs with regard to the suit's dispute, and acknowledged the pending litigation. Settlement negotiations took place after Servatron sued the Kovacs. As in *Meade*, the parties debated matters related to litigation, such as whether Servatron was entitled to resell goods identified to its contracts with IWP. Servatron knew that the Kovacs would defend the case as illustrated by conduct and statements of Servatron's counsel. When Faraz Mobassernia told Michael Atkins that the former had contacted the clerk, Atkins provided Mobassernia the case number. Atkins

10

later forwarded a case schedule to Mobassernia.

Servatron argues that the Kovacs could not substantially comply with CR 55's appearance requirement because their attorney, Faraz Mobassernia, was not licensed to practice in Washington. Servatron relies on *Seek Systems, Inc. v. Lincoln Moving/Global Van Lines, Inc.*, 63 Wn. App. 266, 818 P.2d 618 (1991), for the proposition that a person's ability to appear in the litigation is essential to satisfying appearance requirements. Servatron maintains that because Mobassernia did not tell Servatron that the Kovacs intended to hire local counsel, or that Mobassernia intended to appear pro hac vice, he could not substantially comply with the appearance requirements on the Kovacs' behalf.

In *Seek Systems, Inc. v. Lincoln Moving/Global Van Lines, Inc.*, the defendant's customer service representative called plaintiff's counsel and informed counsel that he would forward a bill of lading. The service representative likely never forwarded the bill and took no other action to defend the case. This court wrote: "we assume that a single phone call can constitute a notice of appearance if the caller is one who could appear for the defendant." 63 Wn. App. at 270. In ruling the defendant had not appeared, this court noted that no attorney had called on behalf of the defendant, among other factors.

We consider *Sacotte Constr. Inc. v. Nat'l Fire & Marine Ins. Co.*, 143 Wn. App. 410 (2008) more parallel. In *Sacotte*, we clarified that "when an attorney appears for a defendant, it is the defendant who has made the appearance, not the attorney." 143 Wn.

App. at 416. We held that a defendant's informal appearance is not negated by the fact that an opposing party could move to disqualify the attorney who made the initial informal appearance on the defendant's behalf. The defendant's attorney who made the contact in *Sacotte* held a conflict of interest that would bar him from representing the defendant in the lawsuit.

Consistent with *Sacotte* and despite later changing its answer, Servatron admitted at court that, if Faraz Mobassernia filed a formal appearance with the court despite not being licensed in Washington, the Kovacs would sufficiently appear. Wash. Court of Appeals oral argument, *Servatron, Inc. v. Intelligent Wireless Prod. Inc.*, No. 32251-3-III (Jan. 27, 2015), at 7 min., 23 sec. (on file with court). We agree. Mobassernia's lack of license might subject him to sanctions and subject him to a disqualification, just as defendant's counsel was subject to a motion for disqualification in *Sacotte*. Still, Mobassernia's appearance would constitute an appearance for Lawrence and Jane Doe Kovac. If Mobassernia could enter an operational formal notice of appearance, his conduct should be sufficient for an effective informal appearance.

CR 60 Timely Motion To Vacate Default

Servatron argues, and the trial court agreed: even if the order of default should not have been entered, the Kovacs' motion to set aside the default judgment was untimely under CR 60(b). Servatron maintains that failure to provide notice of a motion for default under CR 55 renders the subsequent judgment voidable, rather than void, thereby

12

precluding a court from granting a defendant relief under CR 60(b)(5). We disagree. The lack of notice rendered the judgment void, and the Kovacs could vacate the judgment at any time.

CR 60 reads, in relevant part:

> **(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc.** On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>    (1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;
>    (2) For erroneous proceedings against a minor or person of unsound mind, when the condition of such defendant does not appear in the record, nor the error in the proceedings;
>    (3) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 59(b);
>    . . . .
>    (5) The judgment is void;
>    . . . .
>    The motion shall be made within a reasonable time and for reasons (1), (2) or (3) not more than 1 year after the judgment, order, or proceeding was entered or taken.

CR 60(b) provides eleven grounds for a trial court to vacate a default judgment, the first three of which must be brought within one year of the entry of the judgment or order. CR 60(b)(5) impliedly directs a court to vacate a default judgment that is void regardless if the motion is not brought within a reasonable amount of time.

Washington courts have repeatedly and consistently held that, if a party otherwise entitled to notice under CR 55 does not receive such notice, the trial court lacks the authority to enter the judgment. An aggrieved party is entitled as a matter of right to have

13

the order of default set aside and any resulting default judgment vacated. *Tiffin v. Hendricks*, 44 Wn.2d 837, 847, 271 P.2d 683 (1954); *Hous. Auth. of Grant County v. Newbigging*, 105 Wn. App. 178, 190, 19 P.3d 1081 (2001); *Shreve v. Chamberlin*, 66 Wn. App. at 731 (1992). A trial court holds a nondiscretionary duty to vacate a void judgment. *Allstate Ins. Co. v. Khani*, 75 Wn. App. 317, 323, 877 P.2d 724 (1994). There is no time limit to bring a motion to vacate a void judgment. *Ahten v. Barnes*, 158 Wn. App. 343, 350, 242 P.3d 35 (2010). A party can wait several years to vacate a void default judgment. *Brenner v. Port of Bellingham*, 53 Wn. App. 182, 188, 765 P.2d 1333 (1989); *In re Marriage of Markowski*, 50 Wn. App. 633, 635, 749 P.2d 754 (1988).

Servatron relies on *In re Marriage of Mu Chai*, 122 Wn. App. 247, 254-55, 93 P.3d 936 (2004), for the proposition that "any attempt to vacate a default judgment based on an irregularity that does not call into question the court's jurisdiction must be made through CR 60(b)(1), not CR 60(b)(5)." Br. of Resp't at 24. By this argument, Servatron seeks to distinguish between an order of default without notice and a default judgment without notice. *Chai* does not make such an explicit distinction, but rather is consistent with the decisions cited above:

> Where a court lacks jurisdiction over the parties or the subject matter, *or lacks the inherent power to make or enter the particular order*, its judgment is void. A motion to vacate a void judgment may be brought at any time, and the court must vacate the judgment as soon as the defect comes to light.

*Chai*, 122 Wn. App. at 254 (emphasis added) (footnotes omitted).

14

Servatron overcomplicates the analysis found in *Chai*. The Kovacs were entitled to notice of the motion for default. They did not receive that notice. Therefore, the trial court lacked the authority to enter the order of default. Just as the order is invalid, so too is the judgment. Both existing case law and common sense defies affirming a default judgment, while simultaneously setting aside the order on which it is based.

Servatron cites two aging decisions in support of its argument that the default judgment was voidable, not void: *Person v. Plough*, 174 Wash. 160, 24 P.2d 591 (1933); and *Chehalis Coal Co. v. Laisure*, 97 Wash. 422, 166 P. 1158 (1917). In each case, the Supreme Court ruled that a default judgment was voidable when the plaintiff failed to provide notice to the defendant of a default motion. Thus, in each case the defendant needed to show a valid defense to obtain a vacation of the default. The two decisions lend support to Servatron's contention that its failure to provide notice of the motion for default merely renders a subsequent judgment obtained on that successful motion voidable, and not void, therefore necessitating that such a motion to vacate be brought within one year pursuant to CR 60(b)(1). We decline to follow the decisions for two reasons. First, the high court decided *Plough* and *Chehalis Coal* before adoption of Washington's Civil Rules in 1967. Second, the two decisions conflict with more recent decisions such as *Tiffin v. Hendricks*, 44 Wn.2d at 847; *White v. Holm*, 73 Wn.2d 348, 352, 438 P.2d 581 (1968); *Gage v. Boeing Co.*, 55 Wn. App. 157, 165, 776 P.2d 991

15

No. 32251-3-III
*Servatron, Inc. v. Intelligent Wireless*

(1989); *Morin v. Burris*, 160 Wn.2d at 753 (2007); and *Meade v. Nelson*, 174 Wn. App. at 750.

Lawrence and Jane Doe Kovac argue that they hold meritful defenses. When a default order is void, the court need not decide whether the defendant has a defense to the claim. *Colacurcio*, 110 Wn. App. at 497; *Leen v. Demopolis*, 62 Wn. App. 473, 477, 815 P.2d 269 (1991). Therefore, we make no comment on the Kovacs' defenses.

Jane Doe Kovac also argues that this court lacked personal jurisdiction over her since she had no contact with the State of Washington. Because we vacate the order of default and default judgment, we do not address this question. During oral argument, Jane Kovac agreed this court should not address personal jurisdiction if it vacates the default judgment. Wash. Court of Appeals oral argument, *supra*, at 7 min., 23 sec.

## CONCLUSION

We vacate the order of default and the default judgment entered against Lawrence and Jane Doe Kovac. We remand the case to the superior court for further proceedings.

_____
Fearing, J.

WE CONCUR:

_____     _____
Siddoway, C.J.                       Lawrence-Berrey, J.

16