IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CYRUS WAY PARTNERS, LLC, a Washington limited liability company, | No. 84291-9-I |
| Respondent, | DIVISION ONE |
| v. | |
| CADMAN, INC., a Washington corporation, | UNPUBLISHED OPINION |
| Appellant, | |
| OLYMPIC CONCRETE FINISHING, INC., a Washington corporation, | |
| Defendant. | |

BOWMAN, J. — Cadman Inc., now Cadman Materials Inc., appeals an order denying its motion to vacate a default judgment for Cyrus Way Partners LLC. Because Cadman's motion to vacate is untimely under CR 60(b)(1) and Cadman establishes no other ground for relief, we affirm.

FACTS

Mike Bourgeois is the owner of both Cyrus and Orca Beverage Inc. In early 2018, Cyrus commenced a project to build a warehouse on one of its properties for Orca's use as a tenant. The project required installation of a concrete slab. Cyrus hired Kosnik Engineering to design the slab.

Cyrus first hired SKR Northwest Inc. as the concrete subcontractor for the project. SKR then selected Cadman to provide concrete for the slab. Sometime later, Cyrus terminated SKR, and Cadman orally agreed to continue providing concrete for the warehouse project.

Cyrus hired Olympic Concrete Finishing Inc. to finish the concrete slab. Kosnik created and provided to Cadman and Olympic the concrete slab's specifications. The specifications required the slab to be "seven inches thick, heavily rebar reinforced, with added macro fiber to increase strength." Cadman was responsible for preparing the proper concrete mix to comply with Kosnik's specifications.

On April 1, 2018, Cadman poured the concrete while Olympic followed to finish the slab. The day after the pour, Cyrus discovered defects with the slab. The defects included "uneven texture, mounds, pattern cracks, and uplifts/delamination." Cadman and Olympic blamed each other for the defects. So, Cyrus hired an expert, American Engineering Testing Inc. (AET), to test the slab to determine the source of the issue.

In a September 2019 report, AET stated it found "exceptionally high air content" in the concrete Cadman used and "concluded that this high air content likely caused the slab's overall failure." Cadman then hired its own expert, BASF, to test the slab. BASF took core samples of the concrete and created an October 2019 report that showed the concrete contained " '[h]igher-than-designed' " air content and that this " 'likely made determining the proper timing of finishing difficult.' "

2

Cadman assured Cyrus that it wanted to resolve the problems with the slab " 'as quickly as possible.' " It told Cyrus in February 2020 that it hired " 'a contractor to come out and bid for the repair work,' " but "nothing happened." On May 18, 2020, Cyrus e-mailed Cadman, asking how it intended to repair the slab. About a week later, on May 26, Cadman told Cyrus that one of its employees would reach out " 'shortly' " to discuss the details. But again, no one reached out.

On July 7, 2020, Dean von Kallenbach of the law firm Williams Kastner (WK) sent Cadman's technical service manager a letter, notifying him that WK represented "Cyrus Way LLC / Orca Beverage." Von Kallenbach explained in the letter that his client wanted to know what Cadman planned to do to repair the slab. Von Kallenbach warned Cadman that while Cyrus "wants to resolve this matter in an amicable manner," it had been more than 15 months since Cadman poured the concrete, and that Cyrus "cannot wait forever for Cadman to take action." Still receiving no response from Cadman, Cyrus hired HTI Polymer Inc. to repair the slab. Cyrus paid HTI $240,377.75 for the repairs.

After sending the July 2020 letter, WK discovered it represented Cadman in unrelated matters. So, on October 21, 2020, WK sent Cadman's senior associate general counsel a letter, alerting Cadman that WK "has been asked to represent its longstanding client, Orca . . . , in connection with a matter involving Cadman['s] . . . installation of concrete . . . at a warehouse owned by Orca." WK sought a waiver of any potential conflict of interest. Cadman's general counsel signed the waiver.

On December 10, 2020, without admitting any fault, Cadman offered $10,000 toward remediation of the concrete slab "on the condition Orca and Cyrus Way, LLC sign a final release in a form prepared by Cadman." Cyrus did not respond to the offer.

On December 22, 2020, Cyrus sued both Cadman and Olympic. It alleged causes of action for breach of contract, breach of warranty, negligent or intentional misrepresentation, and violation of the Consumer Protection Act, chapter 19.86 RCW. Cyrus properly served a summons and complaint on Cadman's registered agent. The registered agent forwarded the complaint to Bruce Luck, senior associate general counsel for Cadman's Canada region. Cadman did not answer the lawsuit.

On January 26, 2021, Cyrus moved for default against Cadman. The trial court granted the motion on February 4, 2021. On March 22, 2021, the court entered a default judgment of $240,377.75. Then, on March 31, 2021, the court signed an agreed order voluntarily dismissing Olympic from the lawsuit under CR 41(a)(1)(A). On April 11, 2022, the court entered a "Final Judgment and Judgment Summary," adding accrued interest to the original judgment for a total of $270,803.87.

In May 2022, Cyrus learned that Cadman Inc. merged with Cadman Materials Inc. Cyrus moved to amend the default judgment to substitute "Cadman Materials, Inc." as the proper judgment debtor. Cyrus served Cadman with notice of its motion to amend.

4

Cadman then formally appeared in the lawsuit. On May 24, 2022, it opposed Cyrus' motion to amend the default judgment, moved to disqualify WK, and moved to vacate the default judgment under CR 55(c) and CR 60(b). Cadman senior associate general counsel Luck filed a declaration in support of the motion to vacate, explaining that the registered agent's December 2020 e-mail with the summons and complaint "got lost" in his inbox "due to the craziness of the holiday season and the Covid-19[1] pandemic." The court denied Cadman's motions.

On May 31, 2022, the trial court granted Cyrus' motion and entered an "Amended Final Judgment and Judgment Summary," naming "Cadman Materials, Inc." as the judgment debtor. Then, on June 2, 2022, Cadman moved to vacate the amended default judgment.[2] And on June 9, it again moved to disqualify WK. The trial court denied both motions, as well as Cadman's subsequent motion to reconsider denial of its motion to disqualify WK.

Cadman appeals.

ANALYSIS

Cadman argues that the trial court erred by refusing to vacate the amended default judgment under CR 55 and CR 60(b). It also argues for the first time on appeal that we should vacate the default judgment under CR 12(b)(6).

---

[1] Coronavirus disease 2019.

[2] Cadman refiled its motion to vacate on June 3 and again on June 24, 2022 after the court rejected the motions for calendaring and formatting errors.

Generally, we review a trial court's ruling on a motion to vacate a default judgment for an abuse of discretion.  Little v. King, 160 Wn.2d 696, 702, 161 P.3d 345 (2007).  A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.  Rush v. Blackburn, 190 Wn. App. 945, 956, 361 P.3d 217 (2015).

Washington courts generally disfavor default judgments.  See Morin v. Burris, 160 Wn.2d 745, 754, 161 P.3d 956 (2007).  "We prefer to give parties their day in court and have controversies determined on their merits."  Id.  "But we also value an organized, responsive, and responsible judicial system where litigants acknowledge the jurisdiction of the court to decide their cases and comply with court rules."  Little, 160 Wn.2d at 703.  Our primary concern in reviewing a trial court's decision on a motion to vacate is whether that decision is just and equitable.  Rush, 190 Wn. App. at 956-57.

CR 55 Notice Requirements

Cadman argues we must vacate the amended default judgment because Cyrus did not notify Cadman of its motion for default under CR 55(a)(3) or the entry of the default judgment under CR 55(f).

### CR 55(a)(3) Notice of Motion for Default Judgment

Cadman argues it had a right to notice of Cyrus' motion for default under CR 55(a)(3) because it "informally appeared" in the case.  We disagree.

Under CR 55(a)(3), once a party appears in an action "for any purpose," the movant "shall" serve that party "with a written notice of motion for default and the supporting affidavit at least [five] days before the hearing on the motion."

6

Under RCW 4.28.210, a party appears in a proceeding when it gives written notice of appearance. Absent a formal notice of appearance as contemplated in RCW 4.28.210, a party may still substantially comply with the appearance requirements. See Morin, 160 Wn.2d at 749. This generally requires a defendant to take some formal or informal action after litigation begins, "acknowledging that the dispute is in court." Id. at 757. Examples of informal appearances include the parties exchanging correspondence, Ellison v. Process Systems Inc. Construction Co., 112 Wn. App. 636, 644, 50 P.3d 658 (2002); exchanging telephone calls, Sacotte Construction, Inc. v. National Fire & Marine Insurance Co., 143 Wn. App. 410, 416, 177 P.3d 1147 (2008); engaging in discovery, State ex rel. Trickel v. Superior Court of Clallam County, 52 Wash. 13, 15, 100 P. 155 (1909); and engaging in settlement negotiations, Servatron, Inc. v. Intelligent Wireless Products, Inc., 186 Wn. App. 666, 676, 346 P.3d 831 (2015); so long as those things occur after the plaintiff files suit. See Morin, 160 Wn.2d at 756-57 (defendant must go beyond merely acknowledging that a dispute exists and instead acknowledge that a dispute exists in court).

Here, Cadman argues that "[t]he record provides substantial evidence of communications between Cadman and Orca and its counsel prior to litigation." Specifically, it points to the settlement offer it communicated to Cyrus on December 10, 2020. But Cyrus did not file its complaint until December 22, 2020. Because Cadman's settlement offer occurred before Cyrus filed suit, it does not amount to an informal appearance in the litigation. Cadman had no right to notice of Cyrus' default motion under CR 55(a)(3).

7

CR 55(f) Notice of Entry of Default Judgment

Cadman argues that even if it did not appear in the lawsuit, it had a right to notice of entry of Cyrus' default judgment under CR 55(f).[3] We disagree.

CR 55(f)(1) states, in relevant part:

> When more than 1 year has elapsed after service of summons with no appearance being made, the court shall not sign an order of default or enter a judgment until a notice of the time and place of the application for the order or judgment is served on the party in default, not less than 10 days prior to the entry.

A "judgment" is a "final determination of the rights of the parties in the action and includes any decree and order from which an appeal lies." CR 54(a)(1). When multiple parties are involved in an action, any order or other decision adjudicating fewer than all the parties "shall not terminate the action as to any of the claims or parties" before "entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." CR 54(b).

Cyrus served Cadman with a summons and complaint on December 22, 2020. On March 22, 2021, the trial court entered default judgment against Cadman. But Olympic remained as a defendant in the lawsuit. On March 31, 2021, the court granted Cyrus and Olympic's stipulated motion to dismiss Olympic from the lawsuit under CR 41(a)(1)(A). As of that date, the trial court had adjudicated all the rights and liabilities of the parties, and Cyrus' judgment against Cadman became final. See Rush, 190 Wn. App. at 959 (default judgment against one party became final when the court dismissed the remaining

---

[3] Cadman makes this argument for the first time on appeal, arguing that it amounts to manifest constitutional error under RAP 2.5(a)(3). Cyrus does not challenge whether the issue is properly before us. So, we address the issue on its merits.

8

claims against the other party). Because one year had not yet elapsed between the time Cyrus served Cadman with the summons and complaint and when the trial court entered the default judgment, Cadman had no right to notice under CR 55(f)(1).

Still, Cadman argues that because the voluntary dismissal of Olympic was "without prejudice," it amounts to an interlocutory order that did not become final until April 11, 2022 when the court entered the Final Judgment and Judgment Summary. But a "judgment without prejudice is the same as a judgment with prejudice" in that it still "entirely disposes of the present action." Rose v. Fritz, 104 Wn App. 116, 121, 15 P.3d 1062 (2001). A final judgment without prejudice is different from a final judgment with prejudice only in that it "does not preclude a subsequent action based on the same claims." Id. As a result, the trial court's order dismissing Olympic without prejudice disposed of the lawsuit entirely, rendering Cyrus' judgment against Cadman final.

We reject Cadman's argument that CR 55(f) entitled it to notice of entry of the default judgment.

CR 60(b) Relief from Judgment

Cadman argues that the trial court erred when it refused to vacate the default judgment under CR 60(b)(1) or (11).

CR 60(b)(1) Excusable Neglect

Cadman argues CR 60(b)(1) entitles it to relief because its failure to answer the complaint was excusable. Cyrus argues Cadman's CR 60(b)(1) motion was untimely. We agree with Cyrus.

9

Under CR 60(b)(1), a litigant may seek relief from a judgment if "[m]istakes, inadvertence, surprise, excusable neglect or irregularity" occurred "in obtaining a judgment." But the motion "shall be made within a reasonable time and . . . not more than 1 year after the judgment." CR 60(b). As discussed above, the default judgment against Cadman became final on March 31, 2021. Cadman moved to vacate the default judgment on May 24, 2022, almost 14 months later. As a result, the CR 60(b)(1) motion was untimely.

CR 60(b)(11) Extraordinary Circumstances

Cadman argues in the alternative that "extraordinary circumstances" warrant vacation of the default judgment under CR 60(b)(11). Again, we disagree.

Under CR 60(b)(11), a party may seek relief from a judgment for "[a]ny other reason justifying relief from the operation of the judgment." The use of CR 60(b)(11) should be saved for situations involving extraordinary circumstances not covered by any other section of the rule. Freibe v. Supancheck, 98 Wn .App. 260, 266, 992 P.2d 1014 (1999). Moreover, those circumstances must relate to " 'irregularities extraneous to the action of the court or questions concerning the regularity of the court's proceedings.' " Topliff v. Chi. Ins. Co., 130 Wn. App. 301, 305, 122 P.3d 922 (2005) (quoting In re Marriage of Yearout, 41 Wn. App. 897, 902, 707 P.2d 1367 (1985)). Irregularities justify vacation under CR 60(b)(11), errors of law do not. In re Marriage of Furrow, 115 Wn. App. 661, 674, 63 P.3d 821 (2003). The remedy for an error of law is to appeal from the judgment. Id.

First, Cadman argues that WK's failure to explain in its request for a conflict waiver that it sought to represent both Cyrus and Orca amounts to extraordinary circumstances justifying vacation of the default judgment. But Cadman fails to explain how WK's failure to request a conflict waiver specific to Cyrus caused it to default in the lawsuit. Indeed, Cadman's general counsel acknowledged that Cyrus properly served the lawsuit but that "due to the craziness of the holiday season and the Covid-19 pandemic," Cadman failed to respond.

Next, Cadman argues that extraordinary circumstances exist because Cyrus lacked standing to sue Cadman on behalf of Orca. But the strength of Cadman's purported lack of standing defense is a factor to be considered under a CR 60(b)(1) analysis.[4] And Cadman cannot use CR 60(b)(11) to circumvent the one-year time limit under CR 60(b)(1). Freibe, 98 Wn. App. at 267.

The trial court did not err by refusing to vacate Cyrus' default judgment under CR 60(b)(11).[5]

---

[4] There are four factors to consider when determining whether to set aside a default judgment under CR 60(b)(1). White v. Holm, 73 Wn.2d 348, 352, 438 P.2d 581 (1968). They are (1) whether there is substantial evidence to support a prima facie defense to the claim asserted by the opposing party; (2) whether the moving party's failure to timely appear in the action and answer the opponent's claim was occasioned by mistake, inadvertence, surprise, or excusable neglect; (3) whether the moving party acted with due diligence after notice of entry of the default judgment; and (4) whether substantial hardship will result to the opposing party. Id.

[5] Cadman argues alternatively and for the first time on appeal that we should vacate the default judgment under CR 60(b)(4) because of WK's "misconduct" in not requesting a conflict waiver specific to Cyrus and not notifying Cadman that Cyrus filed a lawsuit. We generally will not consider issues raised for the first time on appeal. RAP 2.5(a); State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). Cadman makes no argument about why we should address this issue for the first time here, so we decline to do so.

CR 12(b)(6) Failure to State a Claim

Finally, Cadman argues that we should vacate the default judgment because Cyrus' complaint failed to establish facts on which a court can grant relief under CR 12(b)(6). According to Cadman, no facts in the complaint show that Cyrus was a party to the contract.

A CR 12(b)(6) motion to dismiss challenges the legal sufficiency of the allegations in a complaint. Contreras v. Crown Zellerbach Corp., 88 Wn.2d 735, 742, 565 P.2d 1173 (1977). The trial court may dismiss a complaint under CR 12(b)(6) only if it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, entitling the plaintiff to relief. Bravo v. Dolsen Cos., 125 Wn.2d 745, 750, 888 P.2d 147 (1995). We presume all facts alleged in the plaintiff's complaint are true. Tenore v. AT & T Wireless Servs., 136 Wn.2d 322, 329-30, 962 P.2d 104 (1998).

Cadman argues CR 12(b)(6) for the first time on appeal. It asserts without meaningful analysis that it may do so under RAP 2.5(a)(2) (one exception to the general rule that we may refuse to review any claim of error not raised in the trial court is when the claim is for "failure to establish facts upon which relief can be granted"). Cyrus does not respond to the argument. In any event, Cadman's CR 12(b)(6) argument lacks merit. Cyrus explained in its complaint that "Cyrus Way Partners, LLC and Orca Beverage, Inc., are collectively referred to as 'Orca.' " It then alleges that "Orca entered into an oral contract with Cadman to provide materials for and to pour the [concrete] slab." Assuming these alleged facts are

true, Cyrus' complaint adequately alleges it was a party to the contract. We reject Cadman's CR 12(b)(6) challenge.

Because Cadman's motion to vacate was untimely under CR 60(b)(1) and it provides no other ground for relief, we affirm.

Bremmer, J

WE CONCUR:

Smith, C.J.                    Mann, J.