# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ALAA ELKHARWILY, M.D., | No. 55283-3-II |
| Appellant, | |
| v. | |
| KAISER PERMANENTE; GROUP HEALTH SYSTEM; DAVID DEMPSTER, M.D.; WILLIAM CAMMARANO, M.D.; TONY HAFTEL, M.D.; DENNIS DELEON, M.D.; BENNETT BIGELOW & LEEDOM, P.S.; BRUCE MEGARD; ERIN SEEBERGER; KIM NIGHSWAGER; FRANCISCAN HEALTH SYSTEM; JOHN DOE and MARY DOE I-X, | UNPUBLISHED OPINION |
| Respondents. | |

VELJACIC, A.C.J. — For over 12 years, Alaa Elkharwily, M.D., has been litigating the rescission of his privileges to practice at St. Joseph Medical Center in Tacoma. Elkharwily previously filed and lost two other cases, which focused on the same underlying facts before us. Now, in the third case, Elkharwily appeals the trial court's denial of several motions he filed below, an order dismissing all of his claims, and an order granting sanctions and declaring Elkharwily a vexatious litigant.

Because Elkharwily's action is barred by res judicata, we affirm the trial court's order

dismissing this case. For the reasons explained below, we also affirm the other orders challenged

in this appeal. We conclude that the court did not err in declaring that Elkharwily is a vexatious

litigant. We award attorney fees on appeal to Respondents in an amount to be determined by a

commissioner of this court.

FACTS[1]

I.    BACKGROUND

A.      Elkharwily's Termination

In March 2012, Elkharwily, a Washington-licensed physician, accepted an offer to work

as a night-shift hospitalist (nocturnist) for Washington Permanente Medical Group P.C. (Group

Health) in Tacoma. Elkharwily's employment was contingent upon him getting privileges to

practice medicine at St. Joseph  Medical Center in Tacoma, which was operated by Franciscan

Health System (FHS). Elkharwily applied for, and was subsequently granted, temporary privileges

to practice at St. Joseph.

Shortly after being granted temporary privileges, however, FHS's credentialing committee

"issued a report to [FHS's medical] executive committee concerning 'red flags' in Elkharwily's

background." *Elkharwily v. Franciscan Health Sys.*, No. C-17-5838-RBL, 2018 WL 690945, at

*1 (W.D. Wash. Feb. 2, 2018) (court order).[2]  FHS rescinded Elkharwily's temporary privileges

---

[1] The trial court took judicial notice of the decisions from *Elkharwily v. Franciscan Health Sys.*, No. 3:15-cv-00579-RJB, 2016 WL 4268938 (W.D. Wash. Aug. 15, 2016) (court order) (*Elkharwily* I) and *Elkharwily v. Franciscan Health Sys.*, No. C17-5838-RBL, 2018 WL 690945 (W.D. Wash. Feb. 2, 2018) (court order) (*Elkharwily* II). Because the underlying facts of this appeal are the same as *Elkharwily* I and II, we rely on those decisions for this opinion.

[2] The report focused on Elkharwily's diagnosis of bipolar disorder, his termination from the Mayo clinic in 2010, a "gap" in his resume, and when he planned to take the board exam. *Elkharwily* I, 2016 WL 4268938, at *1.

and had Dennis deLeon, M.D., and Tony Haftel, M.D., both employed at FHS, interview Elkharwily about the report. After the interview, Haftel and deLeon "expressed concerns to the medical executive committee about Elkharwily's clinical competence." *Elkharwily* II, 2018 WL 690945, at *1. FHS then ordered a competency assessment, which was facilitated by Group Health in the form of on-the-job supervision (proctoring) for six weeks. Because Elkharwily was hired on as a nocturnist, FHS's executive committee concluded that Elkharwily needed to receive nighttime proctoring from a "qualified privileged and credentialed" night-shift hospitalist. Clerk's Papers (CP) at 20. Due to inadequate staffing, Group Health and an officer, David Dempster, M.D. (collectively referred to as "Group Health"), could not facilitate night-shift proctoring. Because of this, FHS ultimately upheld its decision to rescind Elkharwily's temporary privileges at St. Joseph, and Group Health fired Elkharwily.

Elkharwily exercised his right to an internal appeal before a review-hearing panel, consisting of three active FHS staff members unfamiliar with the case, in January 2013. The panel issued a "non-binding recommendation that the executive committee should provide Elkharwily [with] the opportunity to respond to its rejection of the proctoring plan." *Elkharwily* II, 2018 WL 690945, at *1. The executive committee ultimately rejected the panel's recommendation, explaining that Group Health did not have adequate staffing and FHS did not have an obligation to provide proctoring itself. FHS upheld its rescission of Elkharwily's temporary privileges.

B.      *Elkharwily* I

In November 2015, Elkharwily filed a lawsuit against FHS in state court. Elkharwily alleged that FHS defamed him and engaged in unlawful discrimination, violating the Washington Law Against Discrimination (WLAD), RCW 49.60.030; the Rehabilitation Act, 29 U.S.C. § 794; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d); and the False Claims Act, 31 U.S.C.

§ 3729. FHS removed the case to the Federal District Court for the Western District of Washington.

Prior to trial, FHS moved to dismiss the case under Fed. R. Civ. P. (FRCP) 12(b)(6). Judge Robert J. Bryan granted FHS's motion in part and denied in part, dismissing only the one count under the False Claims Act. Then, FHS moved for summary judgment pursuant to FRCP 56(c). Judge Bryan granted FHS's motion for summary judgment on all counts except for Elkharwily's WLAD claim.

The WLAD claim went to trial in federal court. The jury returned a verdict in FHS's favor in October 2016. Elkharwily proceeded to file a motion for a new trial. Judge Bryan denied the motion. Elkharwily filed a motion for reconsideration, which Judge Brian also denied. Then, Elkharwily filed a motion for relief from judgment pursuant to FRCP 60(b)(3) and (d)(3). In this motion, Elkharwily sought relief on grounds that *FHS's counsel concealed evidence by redacting the minutes from the FHS medical executive committee's meeting regarding Elkharwily's temporary privileges* and committed fraud upon the court.[3] Elkharwily argued that this fraudulent activity concealed the fact that there were three Group Health nocturnists available to proctor him, which could have affected the jury's verdict.

Again, Judge Bryan denied Elkharwily's motion. In Judge Bryan's decision denying Elkharwily's motion, Judge Bryan reasoned that there was no "'newly discovered evidence that, with reasonable diligence, could not have been discovered'" prior to or during trial. *Elkharwily v. Franciscan Health Sys.*, No. 3:15-cv-00579-RJB, 2016 WL 4268938, at *1 (W.D. Wash. Aug. 15, 2016) (court order) (*Elkharwily* I) (quoting FRCP 60(b)(2)(3)). Judge Bryan also noted that

---

[3] At this point in *Elkharwily* I, FHS was represented by Bruce W. Megard, Jr., and Erin C. Seeberger at Bennett Bigelow & Leedom, who are now defendants in *Elkharwily* III.

"[d]iscovery was properly conducted in all respects," and there was no showing "of 'fraud, . . . misrepresentation, or misconduct by an opposing party.'" *Id.* at 2 (quoting FRCP 60(b)(2)(3)). Moreover, Judge Bryan explained that, at trial, "[n]o witness testified that Group Health physicians were qualified and available to proctor [Elkharwily] at night," and Elkharwily's claims stating otherwise were "unsubstantiated." *Id.*

Elkharwily filed yet another motion for reconsideration. Elkharwily continued to claim that newly discovered evidence revealed that FHS concealed the fact that there were several doctors available to proctor him. And again, Judge Bryan denied Elkharwily's motion. Ultimately, Elkharwily appealed the judgment to the Ninth Circuit. *Elkharwily v. Franciscan Health Sys.*, 771 Fed. Appx. 758 (9th Cir. 2019).

### C.     *Elkharwily* II

Not even a year after Judge Bryan denied Elkharwily's fourth post-trial motion, and while his appeal was under consideration in the Ninth Circuit in *Elkharwily* I, Elkharwily filed another lawsuit against FHS in October 2017 in federal court. *Elkharwily* II, 2018 WL 690945. This time, Elkharwily sought to vacate the judgement in *Elkharwily* I and focused on FHS's counsel committing "fraud on the court." CP at 409. Elkharwily claimed that FHS's counsel "procured [a] judgement [in *Elkharwily* I] through an unconscionable scheme to deceive the court and [Elkharwily] through the use of misleading, inaccurate, false and incomplete responses to discovery requests," and "concealing documents and information requested by" Elkharwily. CP at 409.

FHS moved to dismiss Elkharwily's case under FRCP 12(d)(6). FHS argued that Elkharwily's action was barred by the doctrine of res judicata because Elkharwily was simply relitigating the underlying facts and issues addressed in *Elkharwily* I. FHS also moved for sanctions under FRCP 11 on the grounds that Elkharwily's current action "serve[d] no purpose other than to harass FHS and its counsel and add unnecessary expense to [the] case." CP at 452.

Judge Ronald B. Leighton granted FHS's motion to dismiss. Judge Leighton noted that this was Elkharwily's "seventh overall effort to allege and demonstrate fraud" on behalf of FHS and its counsel regarding the "*altered or forged . . . committee minutes [in an attempt] to conceal the identity of proctors.*" *Elkharwily* II, 2018 WL 690945, at *3 (emphasis added). Judge Leighton also explained that "Judge Bryan *fully heard and repeatedly rejected*" Elkharwily's claims of fraud and acknowledged the pending appeal. *Elkharwily* II, 2018 WL 690945, at *4 (emphasis added). Because of this, Judge Leighton concluded that Elkharwily's claims were barred by res judicata.

Judge Leighton also granted FHS's motion for sanctions. Judge Leighton reasoned that "Elkharwily has long been on notice that his fraud claims were or could have been litigated previously, even if they were meritorious." *Elkharwily* II, 2018 WL 690945, at *5. Consequently, Judge Leighton imposed $2,500 in sanctions against Elkharwily.

D.      Elkharwily's Appeals

The Ninth Circuit consolidated the appeals for *Elkharwily* I and II and affirmed both judgments on June 7, 2019. *See Elkharwily*, 771 Fed. Appx. at 761. With respect to *Elkharwily* I, the court explained that "Elkharwily did not present new evidence that could not, with reasonable diligence, have been discovered earlier," nor did Elkharwily "show that FHS presented fraudulent evidence regarding the availability of other nocturnists to proctor him." *Elkharwily*, 771 Fed. Appx. at 760. As for *Elkharwily* II, the court reasoned that Judge Leighton correctly concluded

6

that "Elkharwily's claim was *plainly barred by res judicata and* [*was*] . . . *baseless*." *Elkharwily*, 771 Fed. Appx. at 761 (emphasis added). Elkharwily then petitioned for a rehearing en banc, which the Ninth Circuit denied on September 5.

E.     Elkharwily's Petition for Certiorari

Elkharwily petitioned for a writ of certiorari before the Supreme Court of the United States. *See Elkharwily v. Franciscan Health Sys.*, 140 S. Ct. 1115, 206 L. Ed. 2d 184 (2020). The Court denied review of the Ninth Circuit's decision on February 24, 2020.

II.     *ELKHARWILY* III

On May 1, 2020, Elkharwily filed a *third* lawsuit in Pierce County Superior Court (*Elkharwily* III) against FHS (and its employees William Cammarano, Tony Haftel, Dennis deLeon, and Kimberly Nighswonger), the law firm representing FHS, Bennett, Bigelow & Leedom, P.S. (BB&L) (and its attorneys Bruce Megard Jr. and Erin Seebager), Group Health (and its officer David Dempster), and Kaiser Foundation Health Plan of Washington (KFHPW) as defendants (collectively referred to as "Defendants" and/or "Respondents"). Elkharwily's amended complaint alleged several counts of breach of contract, fraud and misrepresentation, negligence, tortious interference, civil conspiracy, and intentional infliction of emotional distress. Upon receiving service of the complaint, defendants timely filed a notice of removal to the United States District Court for the Western District of Washington.[4]

Between June 1 and June 24, all defendants filed notices of appearance. Defendants then proceeded to file motions to dismiss, and Elkharwily filed a motion to remand the case back to state court and requested sanctions under FRCP 11. Prior to the federal district court ruling on any

---

[4] Defendants filed their original notice of removal on May 29, 2020. Elkharwily filed his amended complaint on June 1, and defendants filed an amended notice of removal on the same day.

of the parties' motions, Elkharwily filed motions for default judgment against all defendants on June 26 in the Pierce County Superior Court. Elkharwily argued that defendants had not filed an answer. The state trial court denied Elkharwily's motions, acknowledging that a notice of removal had been filed. Elkharwily filed another round of motions for default judgment with the state trial court on July 6. Again, the state trial court denied Elkharwily's motions on the same basis as its prior decision.

On September 24, the federal district court granted Elkharwily's motion to remand the case back to state court. Judge Benjamin H. Settle concluded that there was not complete diversity between the parties because Elkharwily was domiciled in Washington. But Judge Settle also denied Elkharwily's motion for sanctions pursuant to FRCP 11. Elkharwily filed a motion for reconsideration regarding Judge Settle's order denying sanctions.

Before Judge Settle had announced his decision on Elkharwily's motion for reconsideration, Elkharwily filed *another* round of motions for default judgment in the state trial court. Yet again, the state trial court denied Elkharwily's motions, explaining that defendants had not been provided notice that the case had been remanded back to state court. Judge Settle denied Elkharwily's motion for reconsideration on October 13, and a certified copy of the order to remand the case was sent to the Pierce County clerk's office on the same day.

After the case had been officially remanded to state court, all defendants promptly filed notices of appearance between October 13 and 14. On October 27, Elkharwily *filed even more motions for default judgment*. On the same day, BB&L filed a motion to dismiss under CR 12(b)(6) and request for judicial notice, arguing among other things, that Elkharwily's claims were barred by res judicata. The remaining defendants either filed their own motions to dismiss, answers to Elkharwily's amended complaint, or joined BB&L's motion to dismiss all before

November 2, the permitted timeframe to submit an answer under CR 12(a). BB&L also filed a motion for sanctions pursuant to CR 11.

In responding to defendants' motions to dismiss, Elkharwily argued that his third lawsuit was based on facts "discovered after both *Elkharwily* I and *Elkharwily* II actions had been filed and could not have been reasonably discovered . . . prior to December 2017." CP at 696-97. The facts in question were the "incomplete and false minutes of the various credentialing and privileging committees." CP at 696. Therefore, Elkharwily asserted that his claims could not be barred by res judicata. Elkharwily also moved to strike the defendants' pleadings on the basis that they had failed to appear and submitted pleadings exceeding the page limitations under PCLR 7(a)(8) without leave of the court and cross moved for CR 11 sanctions.

In November, the trial court granted defendants' motions to dismiss and took judicial notice of the judgments in *Elkharwily* I and II. The court concluded that Elkharwily's claims were barred by res judicata, collateral estoppel, applicable statute of limitations, the litigation immunity privilege, and also concluded that the negligence and breach of contract claims failed because defendants did not owe a duty to Elkharwily. The court denied Elkharwily's motions to strike defendants' pleadings, for default, and for CR 11 sanctions. The court postponed consideration of BB&L's motion for CR 11 sanctions until December 22.

On November 17, Elkharwily filed a motion for new trial, reconsideration, and amendment of judgment pursuant to CR 59. The trial court denied Elkharwily's motion without seeking a reply from Defendants.

Following Elkharwily's motion for reconsideration, FHS filed a motion to declare Elkharwily a vexatious litigant, which was joined by the remaining Defendants. In its motion, FHS requested that the court bar Elkharwily from filing any future appeals, motions, or lawsuits without obtaining leave from the court.

On December 11, the trial court considered BB&L's motion for CR 11 sanctions and FHS's motion for a vexatious litigant order. Before addressing either motion, Elkharwily orally moved for a continuance, requesting more time to prepare and respond to Defendants' submissions. All Defendants objected, arguing that Elkharwily had ample time to respond to BB&L's motion for CR 11 sanctions. As for FHS's motion, FHS explained that the initial motion was timely filed, and the remaining Defendants who joined the motion "didn't add anything substantive." Rep. of Proc. (RP) (Dec. 11, 2020) at 6. The Defendants also noted that all parties had stipulated to permit Elkharwily to have a one-day extension to submit his opposition to Defendants' motions.

Elkharwily claimed that the Defendants also agreed to a continuance if Elkharwily requested it. Additionally, Elkharwily sought to strike FHS's motion for a vexatious litigant order (along with the other Defendants' joinders) on the grounds that they were filed untimely, which prejudiced him due to the lengthy exhibits attached. The trial court, however, noted that the exhibits in Defendants' motions were "all copies of pleadings that [had] been filed in the various Elkharwily actions dating back six or seven or eight years," and assumed that Elkharwily was "intimately familiar with each of those [pleadings] as they [had] adversely affected [Elkharwily's] claims." RP (Dec. 11, 2020) at 11-12. The Defendants reiterated that FHS's motion was timely filed, and the motions for joinder did not add any additional argument warranting a continuance.

The court denied Elkharwily's motions for a continuance and to strike Defendants' motion for a vexatious litigant order. Then, the court granted FHS's motion and declared Elkharwily to be a vexatious litigant. The court reasoned that there was "a need for judicial finality," and the "repetitive and frivolous claims which have already been adjudicated at least once [was] an abuse" of the court's time and resources. RP (Dec. 11, 2020) at 32. And the court acknowledged that "there [was] no end in sight of [Elkharwily's] willingness or . . . desire to continue to litigate this matter." RP (Dec. 11, 2020) at 33. As a result, the court barred Elkharwily from filing any future actions with the trial court without prior authorization. Turning to BB&L's motion for CR 11 sanctions, the trial court also granted the motion and ordered Elkharwily to pay $7,500.

Elkharwily appeals.

## ANALYSIS[5]

### I.  RESPONDENTS DID NOT DEFAULT

Elkharwily argues that the trial court erred in denying his motions for default because Respondents failed to file a notice of appearance or answer after being served. We disagree.

A trial court's decision to deny a motion for default judgment is reviewed for an abuse of discretion. *See Showalter v. Wild Oats*, 124 Wn. App. 506, 510, 101 P.3d 867 (2004). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Id.* What constitutes an appearance is a question of law reviewed de novo. *Meade v. Nelson*, 174 Wn. App. 740, 750, 300 P.3d 828 (2013).

---

[5] Elkharwily has proceeded with this action pro se. Nevertheless, he is held to the same standards as an attorney. *Edwards v. Le Duc*, 157 Wn. App. 455, 460, 238 P.3d 1187 (2010).

CR 4(a)(3) provides that, "A notice of appearance, if made, shall be in writing, signed by the defendant or the defendant's attorney, and shall be served on the person whose name is signed on the summons." "A defendant appears in an action when he or she answers, demurs, makes any application for an order therein, or gives the plaintiff written notice of his or her appearance." RCW 4.28.210. When a party fails "to appear, plead, or otherwise defend," a litigant may pursue a motion for default. CR 55(a)(1). But "[a]ny party may respond to any pleading or otherwise defend at any time before a motion for default and supporting affidavit has been filed, *whether the party previously has appeared or not*." CR 55(a)(2) (emphasis added). "If the party has appeared before the motion is filed, the party may respond to the pleading or otherwise defend at any time before the hearing on the motion." CR 55(a)(2). If, however, "the party has not appeared before the motion is filed[,] the party may not respond to the pleading[,] nor otherwise defend[,] without leave of the court." CR 55(a)(2).

Generally, "[i]t is the policy of the law that controversies be determined on the merits rather than by default." *Dlouhy v. Dlouhy*, 55 Wn.2d 718, 721, 349 P.2d 1073 (1960). "Because default judgments are disfavored, the concept of 'appearance' is to be construed broadly for purposes of CR 55." *Servatron, Inc. v. Intelligent Wireless Prod., Inc.*, 186 Wn. App. 666, 675, 346 P.3d 831 (2015). To that end, Washington courts apply the doctrine of substantial compliance when determining a party's conduct constitutes an appearance. *Morin v. Buris*, 160 Wn.2d 745, 755, 161 P.3d 956 (2007). "Prelitigation communications alone" are insufficient to constitute an appearance. *Id.* at 760. A "defendant must go beyond merely acknowledging that a dispute exists

and instead acknowledge that a dispute exists in court." *Id.* at 756 (emphasis omitted). This is based on the notion that "litigation is inherently formal;" as such, "[a]ll parties are burdened by formal time limits and procedures" to allow judicial oversight and ensure fairness. *Id.* at 757.

Here, Elkharwily's argument that Respondents failed to appear and defend against his action is unsupported by the record. In total, Elkharwily filed four motions for default judgment. At the outset, the first three rounds of motions were baseless because Respondents had properly filed their notice of removal to the United States District Court for the Western District of Washington. Consequently, the trial court lacked jurisdiction over the case until the certified copy of the remand order had been sent to the clerk's office on October 13.[6]

Elkharwily's fourth motion for default was also frivolous. While the case was pending at the district court, Respondents filed notices of appearance and several other pleadings, illustrating their intent to defend against the action. And after the certified copy of the order for remand had been delivered on October 13, Respondents timely filed notices of appearance, motions to dismiss,

---

[6] With respect to Elkharwily's motions for default filed June 26, 2020, and July 6, they were clearly filed after Respondents' notice of removal and before Judge Settle issued his order remanding the case back to state court. As for the motions for default filed on October 8, the case was still in the federal district court's jurisdiction, even though Judge Settle's order was decided on September 24. This is so because Elkharwily filed a motion for reconsideration, which delayed the delivery of the certified copy of the remand order to the clerk's office until October 13.

joinders, or answers in compliance with CR 12(a).[7]  Consequently, Respondents did not have to

seek leave of the court to respond to Elkharwily's motion for default.  CR 55(a)(2).[8]

Therefore, we conclude that Respondents properly appeared in the case, and the trial court

did not abuse its discretion when it denied Elkharwily's motion for default.[9]

---

[7] Because the certified copy of the remand order was delivered on October 13, the deadline to an answer or responsive pleadings to Elkharwily's amended complaint was November 2.  CR 12(a)(1) ("A defendant shall serve an answer . . . [w]ithin 20 days, exclusive of the day of service, after the service of the summons and complaint upon the defendant pursuant to rule 4.").  All of Respondents' notices of appearance and responsive pleadings were filed before November 2.

Relatedly, Elkharwily argues that his motion to strike should have been granted because Respondents filed pleadings exceeding 12 pages, without receiving authorization by the court as required by PCLR 7(a)(8).  Elkharwily claims that Respondents included numerous exhibits and/or incorporated by reference previous filings with the court, prejudicing him.  Even though the court did not explicitly provide leave for the defendants to submit pleadings longer than PCLR 7(a)(8) permits, it implicitly did so because it considered all of the submissions.  And there is nothing in the record to suggest that the court abused its discretion in doing so.

Moreover, under the Civil Rules, "[s]tatements in a pleading may be adopted by reference in a different part of the same pleading *or in another pleading or in any motion*."  CR 10(c) (emphasis added).  And "[d]efects may be overlooked if the opposing party fails to demonstrate prejudice by the moving party's failure to comply with the technical motion requirements.  3A ELIZABETH A. TURNER, WASHINGTON PRACTICE: RULES PRACTICE CR 7 author's cmt. 5 at 201 (7th ed. 2021).  Even if Respondents' pleadings were "defective," the trial court correctly observed that Elkharwily was not prejudiced by Respondents including several exhibits in support of their various motions.  This is so because all exhibits were prior orders from *Elkharwily* I and II, which Elkharwily should have been familiar with given his involvement in the case.

[8] Elkharwily relies extensively on our Supreme Court's decision in *Morin v. Burris*, but that case is inapplicable here.  In *Morin*, the court, in a consolidated appeal, explained that two of the three defendants defaulted because they engaged *solely* in prelitigation communications and *never made any formal submissions with the court*.  160 Wn.2d 745, 750-53, 759-60, 161 P.3d 956 (2007).  That did not happen here.  From the beginning, Respondents clearly demonstrated their intent to defend against Elkharwily's actions and, unlike *Morin*, filed numerous pleadings with the court, including their notice of removal.

We do not suggest that merely filing a notice of appearance prohibits default but instead entitles a defendant to notice of a motion for default.  *Morin*, 160 Wn.2d at 757.

[9] Because we conclude that the trial court did not abuse its discretion in denying Elkharwily's motion for default, we also conclude that the court's denial of Elkharwily's motion to strike Respondents' pleading on this basis was proper.

II.    ELKHARWILY'S CLAIMS ARE BARRED BY RES JUDICATA

Elkharwily argues that the trial court erred by granting Respondents' motion to dismiss on the grounds that his claims are barred by res judicata.  We disagree.

A.    CR 12(b)(6) Motions to Dismiss

We review orders for dismissal under CR 12(b)(6) de novo.  *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 180 Wn.2d 954, 962, 331 P.3d 29 (2014).

Dismissal for failure to state a claim is proper where a complaint is facially deficient because "'it appears beyond a reasonable doubt that no facts exist that would justify recovery.'" *In re Parentage of C.M.F*., 179 Wn.2d 411, 418, 314 P.3d 1109 (2013) (quoting *Cutler v. Phillips Petroleum Co.*, 124 Wn.2d 749, 755, 881 P.2d 216 (1994)).  "The court must assume the truth of facts alleged in the complaint, as well as hypothetical facts, viewing both in the light most favorable to the nonmoving party." *Didlake v. State*, 186 Wn. App. 417, 422, 345 P.3d 43 (2015).

Normally, a trial court must convert a CR 12(b)(6) motion into a motion for summary judgment under CR 56 if it considers matters outside the face of the complaint.  *Jackson v. Quality Loan Serv. Corp.*, 186 Wn. App. 838, 844, 347 P.3d 487 (2015).   There are, however, circumstances under which trial courts can consider materials outside the face of the complaint for CR 12(b)(6) motions.  *Jackson*, 186 Wn. App. at 844.  One circumstance includes taking judicial notice of public documents "if the authenticity of those documents cannot be reasonably disputed." *Id*.  Additionally, a trial court can consider information outside of the complaint without converting a CR 12(b)(6) motion to a summary judgment motion if the "'basic operative facts are undisputed and the core issue is one of law.'"  *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn.2d 820, 827 n.2, 355 P.3d 1100 (2015) (quoting *Ortblad v. State*, 85 Wn.2d 109, 111, 530 P.2d 635 (1975)).

B.     Res Judicata[10]

We review the applicability of res judicata de novo.  *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 305, 96 P.3d 957 (2004); *Lynn v. Dep't of Lab. & Indus.*, 130 Wn. App. 829, 837, 125 P.3d 202 (2005).

Res judicata bars the relitigation of claims determined by a final judgment, as well as claims the plaintiff *could or should have* litigated in the prior litigation.  *Storti v. Univ. of Wash.*, 181 Wn.2d 28, 40, 330 P.3d 159 (2014).  The doctrine "prohibits the same parties from litigating a second lawsuit on the same claim or any other claim" arising from the same transaction or series of transactions "that could have been, but was not, raised in the first suit."  *Cook v. Brateng*, 180 Wn. App. 368, 373, 321 P.3d 1255 (2014).  "A matter should have been raised and decided earlier if it is merely an alternate theory of recovery or an alternate remedy."  *Eugster v. Wash. State Bar Ass'n*, 198 Wn. App. 758, 790, 397 P.3d 131 (2017).  Res judicata does not apply where a reasonably diligent party could not have raised unresolved claims in the prior litigation.  *See Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 865-66, 93 P.3d 108 (2004).

The threshold requirement of res judicata is a valid and final judgment on the merits in a prior suit.  *Id.* at 865.  "Dismissal of an action 'with prejudice' is a final judgment on [the] merits of a controversy."  *Berchauer Phillips Constr. Co. v. Mut. of Enumclaw Ins. Co.*, 175 Wn. App. 222, 228 n.11, 308 P.3d 681 (2013) (quoting *Banchero v. City Council of Seattle*, 2 Wn. App. 519, 525, 468 P.2d 724 (1970)).  Orders granting a motion to dismiss or summary judgment are final

---

[10] Elkharwily argues that preclusion of federal judgments is governed by federal common law, not state law and cites to *Semtek Int'l, Inc. v. Lockheed Martin Corp*., 531 U.S. 497, 121 S. Ct. 1021, 149 L. Ed. 2d 32 (2001), for support.  Even if that were true, there is no meaningful difference between the federal standard and the Washington standard.  *Compare Frank v. United Airlines, Inc.*, 216 F.3d 845, 850 (9th Cir. 2000), *with Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 865-66, 93 P.3d 108 (2004).

judgments for the purposes of res judicata. *See Carter v. Multicare Health Sys.*, 31 Wn. App. 2d 755, 767-68, 781, 553 P.3d 98 (2024) (affirming the trial court's dismissal of plaintiff's case under CR 12(b) based, in part, on res judicata); *Emeson v. Dep't of Corrs.*, 194 Wn. App. 617, 626, 376 P.3d 430 (2016).

Once it has been established that there has been a final judgment, we determine whether subsequent claims are precluded by examining whether the two actions share an "'identity of (1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made.'" *Schroeder v. Excelsior Mgmt. Grp., LLC*, 177 Wn.2d 94, 108, 297 P.3d 677 (2013) (quoting *Mellor v. Chamberlin*, 100 Wn.2d 643, 645-46, 673 P.2d 610 (1983)). The party asserting res judicata bears the burden of establishing all elements. *Richert v. Tacoma Power Util.*, 179 Wn. App. 694, 704, 319 P.3d 882 (2014).

### 1. Final Judgment

There were final orders in both prior actions. *Elkharwily* I ended in a jury verdict in favor of FHS, which was affirmed by post-trial orders, and *Elkharwily* II was disposed of by Judge Leighton's order granting FHS's motion to dismiss. The Ninth Circuit affirmed the district court in both cases.

### 2. Subject Matter

When "determining the identity of subject matter," we look to "'the nature of the claim or cause of action and the nature of the parties.'" *Marshall v. Thurston County*, 165 Wn. App. 346, 353, 267 P.3d 491 (2011) (internal quotation mark omitted) (quoting *Hayes v. City of Seattle*, 131 Wn.2d 706, 712, 934 P.2d 1179 (1997)). "Courts generally focus on the asserted theory of recovery rather than simply the facts underlying the dispute." *Id.*

Here, even though the causes of action pursued by Elkharwily vary throughout each action, the underlying facts are identical in each lawsuit. In all three actions, Elkharwily has litigated the termination of his temporary privileges to practice medicine at St. Joseph Medical Center. Moreover, his allegations of fraud by FHS and its counsel by concealing and/or redacting the committee minutes concerning his temporary privileges were central to his post-trial motions in *Elkharwily* I, the entirety of his action in *Elkharwily* II, as well as the case before us.

### 3. Cause of Action

This factor does not hinge on the specific cause of action; rather, courts consider:

> (1) whether the rights or interests established in the prior judgment would be destroyed or impaired by the prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the suits involved infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Pederson v. Potter*, 103 Wn. App. 62, 72, 11 P.3d 833 (2000). A party does not need to prove all factors to demonstrate res judicata bars a claim. *Kuhlman v. Thomas*, 78 Wn. App. 115, 122, 897 P.2d 365 (1995).

Here, all factors regarding this element are satisfied. As for the second and fourth factors, it is evident that all three actions arise out of the same transactional nucleus: the alleged wrongful termination of Elkharwily's temporary privileges to practice at St. Joseph Medical Center. And at the heart of the issue, Elkharwily's case is based on a crucial allegation: that the committee minutes were forged to conceal the fact that there was sufficient staffing to proctor Elkharwily at night.

With respect to the first and third factors, this action implicates the same infringed right, and allowing proceedings to continue would have a significant impact on Respondents. In *Elkharwily* I, the jury concluded that Elkharwily had not been wrongfully terminated. And when considering Elkharwily's post-trial motions, Judge Bryan concluded that "[d]iscovery was

properly conducted in all respects," and there was no showing "of 'fraud, . . . misrepresentation, or misconduct by an opposing party.'" *Elkharwily* I, 2017 WL 6018273, at \*2. Both Judge Leighton and the Ninth Circuit confirmed as much. *Elkharwily* II, 2018 WL 690945, at \*4-5; *Elkharwily*, 771 Fed. Appx. at 759-61. Permitting Elkharwily's current action to proceed would disrupt the final determinations of three courts concluding that FHS properly terminated Elkharwily's privileges and counsel did not engage in misconduct.

Elkharwily argues that this case is different because *Elkharwily* I and II involved only the actual termination of his temporary privileges, not the alleged fraudulent behavior by FHS and its counsel. To that end, he asserts that the current action is not barred because he could not have known about the forgery of the committee's minutes even while exercising reasonable diligence. Again, Elkharwily misrepresents the record. In his post-trial motions in *Elkharwily* I, Elkharwily directly addressed this issue and Judge Bryan concluded that there was no evidence of fraud or wrongdoing. More importantly, however, Judge Bryan concluded that Elkharwily *could* have discovered any relevant information prior to or during trial had he exercised reasonable diligence—the very issue before us.

### 4. Persons and Parties

"Generally, for a party to be the same persons or parties for res judicata purposes, they must have the same identities as the parties from the previous litigation." *Penner v. Cent. Puget Sound Reg'l Transit Auth.*, 25 Wn. App. 2d 914, 925, 525 P.3d 1010 (2023). But the identity of parties can be "'nominally different'" and still "'be, in legal effect, the same.'" *Rains v. State*, 100 Wn.2d 660, 664, 674 P.2d 165 (1983) (internal quotation marks omitted) (quoting *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402, 60 S. Ct. 907, 84 L. Ed. 1263 (1940)). Courts have routinely recognized that defendants in separate actions are the same when they are in privity

with each other. *E.g.*, *Ensley v. Pitcher*, 152 Wn. App. 891, 902, 222 P.3d 99 (2009). "A nonparty is in privity with a party if that party adequately represented the nonparty's interest in the prior proceeding." *Feature Realty, Inc. v. Kirkpatrick & Lockhart Preston Gates Ellis, LLP*, 161 Wn.2d 214, 224, 164 P.3d 500 (2007). For example, "the employer/employee relationship is sufficient to establish privity." *Kuhlman*, 78 Wn. App. at 121.

Here, even though FHS was the only defendant named in *Elkharwily* I and II, it adequately represented the interests of all other defendants in the prior action.[11] All defendants were adjacent to or directly involved in the litigation, and each had an interest in the outcome. FHS's employees, for example, were involved in the process that resulted in Elkharwily's temporary privileges being denied. Group Health was ultimately responsible for terminating Elkharwily, which was later acquired by KFHPW. And BB&L and its attorneys represented FHS in *Elkharwily* I and II. The prior determination that FHS properly terminated Elkharwily's temporary privileges and FHS's counsel did not engage in any wrongdoing during its representation, which entailed the same evidence, is central to the issue before us. Therefore, we conclude that FHS adequately represented all other defendants in the prior actions, meaning that they were in privity with all other defendants named in this action.

     5.     The Quality of the Persons for or Against Whom the Claim is Made

This factor focuses on the identity of the party whom res judicata is asserted against. *See Carter*, 31 Wn. App. 2d at 771-72. There is no dispute that Elkharwily has been the plaintiff in all three actions.

---

[11] In *Elkharwily* III, Elkharwily named FHS (and its employees William Cammarano, Tony Haftel, Dennis deLeon, and Kimberly Nighswonger), BB&L (and its attorneys Bruce Megard Jr. and Erin Seebager), Group Health (and its officer David Dempster), and KFHPW as defendants.

Because all five factors have been satisfied, we conclude that Elkharwily's third action arising out of the termination of his temporary privileges to practice is barred by res judicata. Consequently, even when viewing the facts in the light most favorable to Elkharwily, there is no set of facts upon which he could recover. Therefore, the court did not err in dismissing Elkharwily's claims on this basis.[12, 13, 14]

III.     THE COURT DID NOT ERR IN DECLARING ELKHARWILY AS A VEXATIOUS LITIGANT

Elkharwily argues that the trial court abused its discretion by declaring him a vexatious litigant. We disagree.

A trial court's determination that a party is a vexatious litigant is reviewed for an abuse of discretion. *In re Marriage of Giordano*, 57 Wn. App. 74, 78, 787 P.2d 51 (1990).

---

[12] Elkharwily cites to *Howard v. City of Coos Bay*, 871 F.3d 1032, 1041 (9th Cir. 2017), for the proposition that under "federal common law, claim preclusion does not apply to claims that accrue after the filing of the operative complaint." Br. of Appellant at 50. This is problematic for several reasons. First, even if we were to assume the federal standard of res judicata applied, *Howard* is distinguishable. In *Howard*, the plaintiff filed *two* actions, and the second case was based on information discovered during trial for the first case. *Id.* at 1037-39. Here, however, Elkharwily filed *three* actions. Assuming without deciding that his claims would not have been barred by res judicata in the second action, Elkharwily should have pursued the causes of action in the case before us in *Elkharwily* II. For whatever reason, Elkharwily chose not to do so and because of this, aside from the issue of whether the federal standard applies, *Howard* is not applicable. But as Judge Leighton and the Ninth Circuit recognized, Elkharwily's claims in the *Elkharwily* II *were* also barred by res judicata, *Elkharwily* II, 2018 WL 690945, slip op at *4-5; *Elkharwily*, 771 Fed. Appx. at 761, so all of Elkharwily's claims in the second and third actions should have been pursued in *Elkharwily* I. Indeed, in *Elkharwily* I, Judge Bryan concluded that Elkharwily could have discovered the information at issue before or during trial had he exercised reasonable diligence.

[13] Because we conclude that Elkharwily's claims are barred by res judicata, we do not consider the applicability of collateral estoppel, the statute of limitations, and the litigation immunity privilege.

[14] Elkharwily argues that the trial court erred by dismissing his motion for CR 11 sanctions as moot after it had granted Respondents' motion to dismiss. Because the trial court did not err in dismissing Elkharwily's claims, we also conclude that it did not err in determining Elkharwily's CR 11 motion was moot. We also conclude that the court did not err in denying Elkharwily's motion for a new trial/reconsideration.

Even though the right to due process guarantees the opportunity to be heard, no individual has unlimited access to the courts. *Id.* at 77. "In Washington, every court of justice has inherent power to control the conduct of litigants who impede the orderly conduct of proceedings." *Yurtis v. Phipps*, 143 Wn. App. 680, 693, 181 P.3d 849 (2008); *In re Marriage of Lilly*, 75 Wn. App. 715, 720, 880 P.2d 40 (1994). To avoid abuse, "a court may, in its discretion, place reasonable restrictions on any litigant who abuses the judicial process." *Yurtis*, 143 Wn. App. at 693. But mere litigiousness is not enough to support a vexatious litigant order; a trial court must make a "specific and detailed showing of a pattern of abusive and frivolous litigation" to enjoin a party from engaging in future litigation. *Whatcom County v. Kane*, 31 Wn. App. 250, 253, 640 P.2d 1075 (1981). And courts "must be careful not to issue a more comprehensive injunction than is necessary to remedy proven abuses, and if appropriate[,] the court should consider less drastic remedies." *Id.*

Here, the court did not err in declaring Elkharwily a vexatious litigant. This case is similar to *Yurtis*, where the plaintiff relentlessly pursued an action previously litigated on several other occasions. 143 Wn. App. at 693-97. Ultimately, Division III of this court barred Yurtis from filing any future claims or appeals. *Id.* Elkharwily claims that his action is distinct from *Yurtis* because "the trial court did not make any finding that any of the claims or the causes of action in the complaint [was] frivolous or lacked merits." Br. of Appellant at 102. Elkharwily's assertion is disingenuous and contradicted by the record. In the trial court's order, it classified Elkharwily's filings as frivolous twice, and it did so at least once at the hearing considering FHS's motion. RP (Dec. 11, 2020) at 32 (explaining that Elkharwily "[f]looding [the] court with repetitive and frivolous claims which have already been adjudicated at least once is an abuse of discretion.").

There is *ample* evidence in the record to support a "specific and detailed showing of abusive and frivolous litigation." *Yurtis*, 143 Wn. App. at 694. Throughout the course of all three cases, Elkharwily has incessantly filed *countless* documents with the courts to no avail, even after being on notice that his claims were meritless. *See, e.g.*, *Elkharwily*, 771 Fed. Appx. at 761. But in *Elkharwily* III specifically, there are numerous examples. Take, for instance, Elkharwily's motions for default judgment. As previously discussed, all were baseless because they were either filed when the state court did not have jurisdiction over the case, or Respondents had sufficiently filed their notices of appearance and responsive pleadings.

Looking at the bigger picture, however, Elkharwily's entire case rests on frivolous arguments. Elkharwily attempts to argue against the trial court's declaration on the grounds that he has properly filed all submissions with the court and had a right to do so. Elkharwily misses the point. The frivolity of his case is evidenced by the fact that this is his third attempt to relitigate an issue squarely addressed by previous litigation. Elkharwily has long been on notice that his claims are meritless, but he continues to pursue this action. The frivolity of this appeal illustrates the abuse resulting from Elkharwily's conduct.

While this case was pending at this court, Elkharwily sought several extensions to file his brief, supplement the record, and made other filings. And when the commissioners denied his motions, he moved to modify each decision. Additionally, our Supreme Court imposed sanctions for Elkharwily's unabating efforts to seek discretionary review of those orders and barred him from filing any future pleadings until he paid the amount determined by the court. Order, *Elkharwily v. Kaiser Permanente et al.*, No. 103353-2, at 1-2 (Wash. Feb. 7, 2025). The trial court correctly recognized that this case includes "the dogged pursuit of various [frivolous] claims and multiple lawsuits based on the same set of facts since 2015, and [the] repeated attempts to re-

23

litigate the same claims over and over despite multiple dismissals and the imposition of sanctions." CP at 1824. Elkharwily has been undeterred in pursuing meritless claims, despite losing at every stage and being sanctioned by several courts.

In light of the record before us, the court's restriction was reasonable for several reasons. First, and most importantly, previous sanctions imposed in *Elkharwily* I and II had no deterrent effect, meaning the trial court had to take more drastic measures. Second, Elkharwily has continued to pursue frivolous claims to the detriment of Respondents. Even after the Ninth Circuit had determined that Elkharwily's claims were baseless, *Elkharwily*, 771 Fed. Appx. at 761, he filed *Elkharwily* III. And as explained by Respondents, they have exerted considerable resources defending against Elkharwily's actions for more than 10 years. As Judge Leighton observed in *Elkharwily* II, "[t]he law predictably and wisely does not permit a dissatisfied litigant to keep suing on the same claim until he wins." *Elkharwily II*, 2018 WL 690945, at *4. That is what is happening here. Permitting Elkharwily to continue pursuing actions related to the termination of his temporary privileges to practice would upend the notion of judicial finality. Finally, the court's restriction was not an absolute bar on any future action, which would allow Elkharwily to pursue relief if he could demonstrate there is evidence supporting a claim that could not have been discovered even while exercising reasonable diligence.

Therefore, we conclude that the trial court's vexatious litigant declaration and imposition of restrictions to file future lawsuits was not an abuse of discretion.[15, 16]

IV.    ATTORNEY FEES ON APPEAL

Respondents request attorney fees in the form of sanctions under RAP 18.9(a). Because Elkharwily's appeal is yet another example of a frivolous filing in a long line of others, we award attorney fees for Respondents.

Under RAP 18.1(a), a court may award attorney fees on appeal "[i]f applicable law grants to a party the right to recover," and they dedicate a section of their brief to the request. And, separately, under RAP 18.9(a), a court "on its own initiative or on motion of a party may order" sanctions if a "party or counsel . . . files a frivolous appeal." "'An appeal is frivolous if there are not debatable issues upon which reasonable minds might differ and it is so totally devoid of merit that there was not reasonable possibility of reversal.'" *Reid v. Dalton*, 124 Wn. App. 113, 128, 100 P.3d 349 (2004) (quoting *Fay v. Nw. Airlines, Inc.*, 115 Wn.2d 194, 200-01, 796 P.2d 412

---

[15] Elkharwily argues that the court erred in granting Respondents' motion for sanctions under CR 11. For the same reasons that the court did not err in declaring Elkharwily as a vexatious litigant, we conclude that the court did not err in granting sanctions.

[16] Elkharwily also argues that the court erred in denying his motion to continue the case, including his oral motion at the hearing considering FHS's motion to declare him a vexatious litigant. Additionally, he argues that the court erred by failing to enforce the parties' "stipulation" to an extension if Elkharwily requested one.  As explained by Respondents, all submissions with the court relevant to this issue were timely filed. Moreover, the trial court correctly recognized that many of the exhibits included in Respondents' motions were prior pleadings and orders from *Elkharwily* I and II. To that end, the court correctly acknowledged that he could not demonstrate any prejudice from not having more than the permitted time to respond because he should have been familiar with the prior submissions and orders. And there was nothing in the record to support that Respondents agreed to allow Elkharwily any more time than what was specified in the stipulation. Therefore, the court did not abuse its discretion in denying Elkharwily's motions based on the parties' stipulation.

(1990)).  In determining whether an appeal is frivolous, we resolve all doubts in favor of the appellant.  *Streater v. White*, 26 Wn. App. 430, 434, 613 P.2d 187 (1980).

It bears repeating that Elkharwily's appeal, and this entire action for that matter, is frivolous.  Elkharwily has long been on notice that his claims were meritless.  This court does not award attorney fees lightly.  Given Elkharwily's relentless refusal to accept that he does not have any viable claims, however, such action is necessary.

Therefore, we award Respondents attorney fees, in an amount to be determined by a commissioner of this court.

## CONCLUSION

Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, A.C.J.

We concur:

_____
Glasgow, J.

_____
Che, J.

26